THE FIRST NATIONAL BANK OF BOSTON *vs.* PHILIP NICHOLS & others, executors.

Norfolk.   January 8, February 7, 1935. — April 1, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Executor and Administrator*, Retention of assets to satisfy unmatured claim. *National Bank. Contract*, Performance and breach, Construction. *Equity Jurisdiction*, To enforce liability of stockholder of national bank. *Words*, "Creditor," "Right of action."

A national bank, in consideration of an agreement by another national bank to assume and pay its liabilities, transferred to it a part of its assets and in substance agreed that, on a date possibly three years, but not more than four years, later, the transferor bank on demand would pay to the transferee bank any balance of payments it had made on account of the transferor bank's liabilities for which it had not been reimbursed from liquidation of the assets so transferred, which obligation should constitute an existing liability and debt of the transferor bank, and that the statutory liability of the shareholders of the transferor bank for such liability and debt should remain in full force until such debt should have been paid in full. *Held*, that the provisions of U. S. Rev. Sts. § 5151 made shareholders of the transferor bank responsible for its obligations created by the contract as for its "contracts, debts, and engagements."

A vote of the shareholders of the transferor bank, after the making of such contract, for voluntary liquidation in accordance with U. S. Rev. Sts. § 5220 was not a breach of the contract by that bank and did not cause a right of action thereunder to accrue immediately to the transferee bank against the transferor bank.

Though the individual liability of shareholders of the transferor bank, upon its failure to satisfy its obligation to the transferee bank under the contract above described, was statutory in origin, it was so far contractual in nature that the transferee bank, if entitled to enforce it, was, as to the estate of a deceased shareholder of the transferor bank, a "creditor of the deceased" within the provisions of G. L. (Ter. Ed.) c. 197, § 13.

Even if the liability of the estate of a deceased shareholder of the transferor bank in the circumstances above described was contingent, it was not so indefinite as to fall outside the scope of G. L. (Ter. Ed.) c. 197, § 13.

The right of the transferee bank to enforce the statutory liability of the shareholders of the transferor bank did not accrue immediately upon the vote for voluntary dissolution of the transferor bank, which occurred before the expiration of a year after the filing of a bond by the executor of the will of a deceased shareholder, so as to preclude the transferee bank from having assets of his estate ordered retained under G. L. (Ter. Ed.) c. 197, § 13; such right against the stockholders could not arise until the transferee bank owned a matured claim against the transferor bank arising from breach of that bank's contract and, it appearing that there had been no breach before the expiration of said year, such relief under said § 13 was permissible.

The bill in equity authorized by 19 U. S. Sts. at Large, 63, against shareholders of a national bank in voluntary liquidation is not analogous to a creditor's bill for the administration of the estate of a deceased person, but can be brought only by a creditor of the bank when there has accrued to him a matured right of action against the bank.

The fact, that the claim of the transferee bank in the circumstances above described had not matured at the time of the vote for voluntary dissolution of the transferor bank, did not deprive the transferee bank of a right to enforce the stockholders' liability at a later time when its claim should mature.

The agreement between the two banks, above described, that the "promise and liability" of the transferor bank "should constitute an existing and accrued liability, debt, contract and engagement of" that bank, and that the statutory liability of its shareholders therefor "shall be and remain in full force and effect until such debt, contract or engagement shall have been paid in full" did not have the effect of advancing the time of maturity of the liability of that bank or of the secondary liability of its shareholders.

The contract between the two banks above described did not defer for an unreasonable time the accrual of the liability of the shareholders of the transferor bank.

PETITION, filed in the Probate Court for the county of Norfolk on March 20, 1934.

From a decree entered by order of *McCoole*, J., the respondents appealed.

*P. Nichols*, (*J. A. Boyer* with him,) for the respondents.

*J. T. Noonan*, (*W. H. Gulliver, Jr.*, with him,) for the petitioner.

FIELD, J. This is a petition brought on March 20, 1934, in the Probate Court under G. L. (Ter. Ed.) c. 197, § 13, by The First National Bank of Boston against the execu-

tors of the will of Charles H. Farnsworth for an order directing the respondents to retain in their hands sufficient assets to satisfy a claim of the petitioner against the estate of the deceased. A decree was entered on March 21, 1934, directing the respondents to retain in their hands a fixed sum of money or assets sufficient readily to realize that amount in order to satisfy the claim of the petitioner. The respondents appealed. The case comes before us on the petition and the decree.

The question for decision is whether the Probate Court had power to make the decree upon any evidence which might have been presented under the petition. *Conley* v. *Fenelon*, 266 Mass. 340, 342. The case, therefore, is to be considered on the basis of the allegations of the petition.

Under G. L. (Ter. Ed.) c. 197, § 13, relief by way of an order for the retention of assets can be had by a "creditor of the deceased, whose right of action does not accrue within one year after the giving of the administration bond," that is, within the period of limitation fixed by G. L. (Ter. Ed.) c. 197, § 9, or "within such further time as may be allowed by any extension granted under section nine" — or in certain cases under another section — if such creditor presents "his claim to the probate court at any time before the estate is fully administered" and "upon examination thereof, the court finds that such claim is or may become justly due from the estate." (The provisions for extension of time are not material in this proceeding.) On the allegations of the petition the deceased died February 11, 1933, the period of one year after the giving of the bond expired March 22, 1934, and the estate has not been fully administered. The respondents contend that the petitioner's right of action, if any, accrued before March 22, 1934, and, consequently, with respect to such right of action, the petitioner is not within the statute.

Material facts alleged in the petition with respect to the petitioner's right of action are these: The deceased was the real owner of shares of stock in The Atlantic National Bank of Boston, herein referred to as the bank, from May 6, 1932, until his death. "Pursuant to an agreement dated

May 3, 1932, said The Atlantic National Bank of Boston transferred a very large part of its assets to . . . [the] petitioner in consideration of the agreement of . . . [the] petitioner to assume and pay liabilities of said The Atlantic National Bank of· Boston, but by express provision, excluding the liability of said The Atlantic National Bank of Boston to its shareholders, as such. Said agreement, among other things, further contained the promise of said The Atlantic National Bank of Boston to . . . [the] petitioner that in the event that on April 30, 1935, or at the end of any month thereafter, but not later than the end of April, 1936, . . . the liabilities assumed by . . . [the] petitioner . . . shall not have been repaid by liquidation . . . of the assets transferred by said The Atlantic National Bank of Boston, to . . . [the] petitioner, said The Atlantic National Bank of Boston would on demand pay such unpaid balance to . . . [the] petitioner, and said agreement provided that such promise and liability of said The Atlantic National Bank of Boston should constitute an existing and accrued liability, debt, contract and engagement of said The Atlantic National Bank of Boston and the aforesaid statutory liability of shareholders of said The Atlantic National Bank of Boston for such debt, contract and engagement under the laws of the United States shall be and remain in full force and effect until such debt, contract or engagement shall have been paid in full." This agreement "was duly ratified, confirmed and adopted by the vote of the holders of more than two thirds . . . of the shares" of the bank at a special meeting of the shareholders held on June 6, 1932.

At a meeting of the shareholders of the bank held on June 24, 1932, it was voted by holders of more than two thirds of the shares of said bank "to go into liquidation in accordance with Revised Statutes of the United States, sections 5220 and 5221 (Title 12, United States Code, sections 181 and 182)." The "necessary proceedings required by said Revised Statutes of the United States have been and are being taken by said The Atlantic National Bank of Boston."

The "petitioner, as a creditor of said The Atlantic Na-

tional Bank of Boston, under the aforesaid agreement, will, in the event that on or before April 30, 1935, or on or before the date to which such date of April 30, 1935, may be extended . . . the liabilities assumed by . . . [the] petitioner . . . have not been repaid as in said agreement provided, be entitled . . . to enforce such unpaid liability as a debt, contract or engagement of said The Atlantic National Bank of Boston, imposed upon its several shareholders by the national banking laws of the United States" against shareholders.

A "substantial part of the assets transferred to . . . [the petitioner] by The Atlantic National Bank as aforesaid is still in process of liquidation and . . . the final results of such liquidation will not be known for some time, . . . such assets may be insufficient to repay the balance of the liabilities, as such liabilities have been defined in said agreement, assumed by . . . [the] petitioner not heretofore paid, and . . . if such assets so prove insufficient, The Atlantic National Bank will be unable on or before April 30, 1935, (or on or before such later date to which such date may be extended . . .) to pay the balance of such liabilities in accordance with its promise."

The decree was right.

The deceased as a shareholder of the bank was subject to U. S. Rev. Sts. § 5151, (U. S. C. Title 12, § 63,) which provides that "The shareholders of every national banking association shall be held individually responsible . . . for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." See also act of December 23, 1913, c. 6, § 23, 38 U. S. Sts. at Large, 273 (U. S. C. Title 12, § 64). The contract between the petitioner and the bank was made before the shareholders of the bank voted that it go into liquidation in accordance with the statute providing for "Voluntary dissolution." U. S. Rev. Sts. § 5220 (U. S. C. Title 12, § 181). The validity of this contract is not attacked by the respondents. Similar contracts have been held valid. And shareholders are individually responsible for obligations of

the bank created by such a contract, as for "contracts, debts, and engagements" of such bank. *Wyman* v. *Wallace*, 201 U. S. 230. *Hightower* v. *American National Bank of Macon*, 263 U. S. 351.

However, the obligation of the bank under the contract, relied on by the petitioner as imposing individual liability on the estate of the deceased, was to pay to the petitioner on or before April 30, 1935 (or some later date to which by the terms of the contract time for payment might be extended), the unpaid balance of the liabilities of the bank assumed by the petitioner. This obligation was created during the lifetime of the deceased. But, according to the terms of the contract, the time for performance of this obligation would not arrive and, consequently, no right of action against the bank for breach thereof would accrue to the petitioner until more than one year had expired after the respondents gave bond as executors. Moreover, the voluntary liquidation of the bank was not a breach of this obligation for which a right of action against the bank accrued immediately to the petitioner. The vote for voluntary liquidation did not put an end to the corporate existence of the bank (*National Bank* v. *Insurance Co.* 104 U. S. 54, 73–74, 76) or render performance of the contract impossible according to its terms, though such vote imposed limitations on the bank's doing any new business not incidental to liquidation. *Schrader* v. *Manufacturers' National Bank of Chicago*, 133 U. S. 67, 75–76. The vote for voluntary liquidation did not import insolvency of the bank (see *City National Bank of Huron* v. *Fuller*, 52 Fed. Rep. (2d) 870, 873), whatever would be the effect of such insolvency. Nor do allegations of the petition show that the bank has been judicially pronounced insolvent, that in fact it is insolvent or that a receiver thereof has been appointed under the act of June 30, 1876, c. 156, § 1, 19 U. S. Sts. at Large, 63 (U. S. C. Title 12, § 191). See *Hightower* v. *American National Bank of Macon*, 263 U. S. 351, 360. *Lovell* v. *St. Louis Mutual Life Ins. Co.* 111 U. S. 264, 274, and *Central Trust Co.* v. *Chicago Auditorium Association*, 240 U. S. 581, 589, relied on by the respondents, are distinguishable. In spite, therefore, of the vote for voluntary

liquidation the petitioner could bring an action against the bank when liability under the contract should mature, if such liability was not previously discharged (*National Bank v. Insurance Co.* 104 U. S. 54, 73–74, 76), and nothing alleged in the petition advanced the time when such an action could be brought.

No contention is made that G. L. (Ter. Ed.) c. 197, § 13, as a part or modification of the State statute of limitations of actions against executors, is inapplicable to the individual liability of a deceased shareholder of a national bank for its "contracts, debts, and engagements" because such individual liability is created by a Federal statute. See, however, *McDonald v. Thompson,* 184 U. S. 71; *McClaine v. Rankin,* 197 U. S. 154, 158; *Forrest v. Jack,* 294 U. S. 158. And though the individual liability is statutory in origin it is so far contractual in nature that the petitioner, if entitled to enforce the liability, is a "creditor of the deceased" within the broad meaning of those words as used in § 13. See *Union Market National Bank of Watertown v. Gardiner,* 276 Mass. 490, 494. See also *Richmond v. Irons,* 121 U. S. 27, 55–56; *Matteson v. Dent,* 176 U. S. 521, 526–527; *Whitman v. Oxford National Bank,* 176 U. S. 559; *McDonald v. Thompson,* 184 U. S. 71, 74; *McClaine v. Rankin,* 197 U. S. 154, 162. Furthermore, even if the individual liability of the deceased shareholder is contingent it is not so indefinite as to fall outside the scope of the section. *Electric Welding Co. v. Fitz,* 215 Mass. 315, 318. See also *Peabody v. Allen,* 194 Mass. 345; *Converse v. Nichols,* 202 Mass. 270, 275–276. And by clear indications in the section a person may be a "creditor of the deceased" within its terms even before his claim against the deceased has matured. *Gilman v. Taylor,* 266 Mass. 346, 349.

The respondents contend, however, that in the case, as here, of voluntary liquidation, the right of action of a creditor of a national bank to enforce the individual liability of its shareholders for its "contracts, debts, and engagements" accrues immediately upon the act of liquidation with respect both to obligations of the bank which are

due and to those which are not due, and, consequently, that the petitioner's "right of action" to enforce the individual liability of the deceased on the contract of the bank accrued on June 24, 1932, during the lifetime of the deceased and before the year after the respondents gave bond as executors expired on March 22, 1934.

There is a difference between the method of enforcing the individual liability of shareholders of a national banking association for its obligations in the case of involuntary liquidation and that in the case of voluntary liquidation. See *Richmond* v. *Irons*, 121 U. S. 27, 47–51; *McDonald* v. *Thompson*, 184 U. S. 71, 75–76. In the case of involuntary liquidation "No cause of action arises until the assessment is made by the Comptroller and, so far as concerns the need and amount, his findings are conclusive." *Forrest* v. *Jack*, 294 U. S. 158, 162. On the other hand, no such assessment is required in the case of voluntary liquidation, but "when any national banking association shall have gone into liquidation under the provisions of section five thousand two hundred and twenty of . . . [the Rev. Sts. (U. S. C. Title 12, § 181)] the individual liability of the shareholders provided for by section fifty-one hundred and fifty-one of said statutes [U. S. C. Title 12, § 63] may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and of all other creditors of the association, against the shareholders thereof," in the United States District Court. Act of June 30, 1876, c. 156, § 2, 19 U. S. Sts. at Large, 63 (U. S. C. Title 12, § 65).

The argument for the respondents proceeds on the ground that the right under this Federal statute of a creditor of a bank in voluntary liquidation to bring a "bill in equity, in the nature of a creditor's bill" is a "right of action" within the meaning of G. L. (Ter. Ed.) c. 197, § 13, and that such a bill in equity could have been brought by the petitioner immediately upon the vote for voluntary liquidation. The question whether the petitioner could have brought such a bill at any time prior to the expiration of

one year after the respondents gave bond as executors depends upon Federal law and no direct decision of this question has come to our attention. There are, however, indirect indications in the cases dealing with the individual liability of shareholders in other aspects that such a bill in equity could not have been brought by the petitioner before its claim against the bank under the contract matured on or after April 30, 1935.

The individual liability of shareholders in a national bank is "conditional," and "secondary" to the liabilities of such bank. *McClaine* v. *Rankin*, 197 U. S. 154, 160, 161–162. And it was said in *National Bank* v. *Insurance Co.* 104 U. S. 54, 76, that the statute authorizing creditors to bring a bill in equity in the nature of a creditor's bill "seems to confirm the idea that for the purpose of being sued, in order judicially to determine the question of disputed liability . . . [the bank] continues to exist, and the remedy against the shareholders is added as a means of execution, in case the corporate assets have in the mean time been otherwise applied or shown to have been insufficient."

In the leading case of *Richmond* v. *Irons*, 121 U. S. 27, where, however, the bill was brought by a judgment creditor, there are significant statements in respect to the statutory bill in equity. "The intention of Congress evidently was to provide ample and effective remedies in all the specified cases for the protection of the public and the payment of creditors, by the application of the assets of the bank and the enforcement of the liability of the stockholders. . . . The two subjects of applying the assets of the bank and enforcing the liability of the stockholders, however otherwise distinct, are by the statute made connected parts of the whole series of transactions which constitute the liquidation of the affairs of the bank. It was, therefore, proper to describe the bill to be filed by and on behalf of creditors as in the nature of a creditors' bill so as to enlarge the scope and purpose of a bill that might be more strictly limited as a creditors' bill merely." Page 50. The bill "is to be considered from the date of its filing, as a bill on behalf of all the creditors of the bank who should

come in under it and prove their claims. When any creditor appeared during the progress of the cause to set up and establish his claim, it was necessary for him to prove that at the time of filing the bill he was a creditor of the bank; any defence which existed at that time to his claim, either to diminish or defeat it, might be interposed either before the master or on the hearing to the court." Page 52. "In the present case, the suit, although in the nature of a creditor's bill, is not a bill merely for the administration of the assets of an insolvent corporation. There is no fund formerly belonging to the corporation in court for distribution. It is a suit for the enforcement of a personal liability of the defendant stockholders to pay the debts of the corporation, in which the creditors are the complainants. Each creditor becomes a party to the suit, it is true, only when he appears to prove his claim. His right to proceed depends upon the fact of his being the owner of a valid claim against the corporation; but if he proves such a claim, then he does prove himself to be a creditor, and as such is entitled to come in under the decree, and has a right to be considered as a party complainant from the beginning by relation to the time of filing the bill. The beginning of the suit as between the creditor and the stockholder is the date of the filing of the bill, if during its progress and pendency he proves his right to be considered as a cocomplainant." Pages 54–55.

These statements in respect to the nature and incidents of the statutory proceeding naturally import that a person cannot bring a bill in equity under the statute unless at the time he attempts to bring it he owns a valid claim against the bank of which he can make proof, that is, unless he has a present right of action against the bank on a matured claim. This is clearly true of an ordinary creditor's suit brought under general equity jurisdiction to reach and apply equitable assets of the debtor to the payment of his debts. Indeed the "true rule in equity is that under usual circumstances a creditor's bill may not be brought except by a judgment creditor after a return of 'nulla bona' on execution" (*Harkin* v. *Brundage*, 276 U. S. 36, 52), though

it was said in *Case* v. *Beauregard*, 101 U. S. 688, 690–691, that it "has been decided that where it appears by the bill that the debtor is insolvent and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference," and that "whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies." But even if the statutory bill in equity can be brought without a judgment against the bank first having been obtained (see *Wyman* v. *Wallace*, 201 U. S. 230, 242; *Hightower* v. *American National Bank of Macon*, 263 U. S. 351; *S. C.* 254 Fed. Rep. 249; *S. C.* 276 Fed. Rep. 371; compare *Warner* v. *Citizens' National Bank*, 267 Fed. Rep. 661, 662–663), by analogy to the situation where the debtor is insolvent or the "creditor has a trust in his favor, or a lien upon property for the debt due him," it does not follow that such a bill in equity can be brought by a person whose claim against the bank cannot be proved because both unmatured and contingent. (In the cases last cited, as in *Richmond* v. *Irons*, at the time the bill in equity was brought the plaintiff either was a judgment creditor of the bank or had a matured claim against it.) Though the petitioner was the owner of an obligation of the bank from the time the contract was made on the facts alleged in the petition, it was not the owner of a valid claim or right of action against the bank prior to the maturity of this obligation. Until that time its claim not only was unmatured but also was contingent upon the assets transferred by the bank to the petitioner to pay the liabilities of the bank assumed by the petitioner being insufficient for the purpose. And, as already stated, the due date of this claim was not advanced by the vote for voluntary liquidation.

It is urged, however, by the respondents as against the conclusion above reached, that the bill in equity authorized by the statute is not in the nature of a creditor's bill to reach equitable assets of a debtor extended to apply to the individual liability of shareholders — though such liability is not strictly an asset of the bank (*Richmond* v. *Irons*, 121

U. S. 27, 50) — but rather is analogous to a creditor's bill for the administration of the estate of a deceased person (see *Chapman* v. *Banker & Tradesman Publishing Co.* 128 Mass. 478, 479; *Pettibone* v. *Toledo, Cincinnati & St. Louis Railroad*, 148 Mass. 411, 416), and can be brought by a person having a demand "*debitum in presenti, solvendum in futuro*" (see Story, Eq. Jur. [14th ed. by Lyon] § 744; *Whitmore* v. *Oxborrow*, 2 Y. & C. Ch. 13, 17), and that the petitioner's demand against the bank, if any, fell within this description. In *Richmond* v. *Irons*, 121 U. S. 27, 54, however, the statutory bill in equity was said to be "not a bill merely for the administration of the assets of an insolvent corporation" but "a suit for the enforcement of a personal liability of the defendant stockholders to pay the debts of the corporation." And the language just quoted, with its context, implies that, whatever attributes of an administration bill the statutory bill in equity may possess, such a statutory bill, like the usual creditor's bill under general equity jurisdiction, can be brought only by a creditor having a present right of action against the bank for a debt even if circumstances render it unnecessary that the debt should have been reduced to a judgment.

The respondents contend further, in substance, that if, because of the unmatured and contingent nature of the petitioner's claim, the petitioner could not have brought a statutory bill in equity before the expiration of one year after the respondents gave bond as executors, the petitioner has no right whatever against the shareholders on the ground that such a bill can be brought only by a person who was a creditor at the time of the vote for voluntary liquidation entitled to bring such a bill at that time. This contention is not supported by the decided cases. *Richmond* v. *Irons*, 121 U. S. 27, 52, goes no further with respect to the person bringing the bill than to require that such person be the owner of a valid claim against the bank — for which the individual shareholders are liable — provable as of the time the bill was brought. And in *Wyman* v. *Wallace*, 201 U. S. 230, the claim of the plaintiff on which the bill was brought, though arising, as here, out of an

obligation created before the vote for voluntary liquidation, matured so as to create a right of action against the bank after the vote for voluntary liquidation but before the bill was brought. See also *Hightower* v. *American National Bank of Macon*, 263 U. S. 351.

Since it does not appear that any creditor having a matured claim has brought a statutory bill, no question arises as to the effect on the petitioner's rights of such a bill brought before the petitioner's claim against the bank matured so as to be actionable. But no reason appears why the ordinary rule applicable to a creditor's suit in which a receiver has been appointed should not apply, namely, that proof could be made of a claim previously unmatured and contingent if such claim "matures within a reasonable time before distribution can be made." *William Filene's Sons Co.* v. *Weed*, 245 U. S. 597, 602. *International Paper Co.* v. *Priscilla Co.* 281 Mass. 22, 36. A contrary view is not required by the language of the opinion in *Richmond* v. *Irons*, 121 U. S. 27, 54, to the effect that a creditor who proves his claim in a pending statutory suit is not only "entitled to come in under the decree," but also "has a right to be considered as a party complainant from the beginning by relation to the time of filing the bill." The court, as disclosed by other parts of the opinion, was there speaking with reference to matured claims and the effect thereon of a statute of limitations.

The agreement between the petitioner and the bank that the "promise and liability of said The Atlantic National Bank of Boston should constitute an existing and accrued liability, debt, contract and engagement of said The Atlantic National Bank of Boston and the aforesaid statutory liability of shareholders of said The Atlantic National Bank of Boston for such debt, contract and engagement under the laws' of the United States shall be and remain in full force and effect until such debt, contract or engagement shall have been paid in full" — whatever its effect in general — did not have the effect of advancing the time of maturity of the liability of the bank or of the secondary liability of its shareholders. This agreement recognized that the con-

tract between the petitioner and the bank created at once "an existing and accrued liability, debt, contract and engagement" out of which matured primary and secondary liabilities might arise. But until such liabilities arose the petitioner had no enforceable claim against the bank and no such claim against its shareholders independent of a claim against the bank.

That the petitioner is a "creditor" within the broad meaning of that word as used in G. L. (Ter. Ed.) c. 197, § 13, does not import that it is also a "creditor" entitled to bring a "bill in equity, in the nature of a creditor's bill" within the meaning of the Federal statute. The words of a statute are to be construed in the light of the general purpose of the statute under consideration. *Commonwealth* v. *Welosky*, 276 Mass. 398, 401.

It follows from what has been said that, whatever rights the petitioner may have had to protect its unmatured and contingent claim against the bank, it had no "right of action" within the meaning of G. L. (Ter. Ed.) c. 197, § 13, against the respondents before the expiration of a year from their giving bonds as executors.

The respondents make the further contention that such a contract as was made between the petitioner and the bank could not have the effect of deferring the accrual of the liability of the shareholders of the bank for the "contracts, debts, and engagements" of such bank to a date subsequent to the act of liquidation. The principle stated in *Richmond* v. *Irons*, 121 U. S. 27, 61, that it "is not within the power of the officers of the bank, without express authority, by such means to prolong indefinitely an obligation on the part of the shareholders," relied on by the respondents, is inapplicable to the contract here involved. That such a contract can be made is settled by the cases of *Wyman* v. *Wallace*, 201 U. S. 230, and *Hightower* v. *American National Bank of Macon*, 263 U. S. 351. This contract does not defer indefinitely or for an unreasonable time the accrual of the stockholders' liability.

It may be added by way of caution that the decision here made does not purport to determine finally the lia-

bility of the respondents as shareholders of the bank. See *Converse* v. *Nichols*, 202 Mass. 270, 276. It is sufficient for the purposes of G. L. (Ter. Ed.) c. 197, § 13, that the petitioner's "claim is or may become justly due." Furthermore, both on the question of the respondents' liability and on the question whether the petitioner's right of action accrued within one year after the respondents gave bond as executors, this decision affects only the application of the statute of limitations of this Commonwealth.

*Decree affirmed.*