H. G. KILBOURNE COMPANY *vs.* STANDARD STAMP AFFIXER COMPANY.

Suffolk.    January 22, 23, 1913. — November 25, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction*, To reach and apply equitable assets. *Words*, "Debt."

Review by RUGG, C. J., of the successive statutes of this Commonwealth giving jurisdiction in equity to reach and apply equitable assets in payment of a "debt," in relation to the meaning of that word.

A claim for unascertained damages, not ascertainable by computation, for the breach of an executory contract is not a "debt" within the meaning of R. L. c. 159, § 3, cl. 7, as amended by St. 1902, c. 544, § 23, and St. 1910, c. 531, § 2, giving jurisdiction in equity to reach and apply equitable assets in payment of a debt.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 2, 1912, and amended, after demurrer, on November 8, 1912. The interlocutory decree allowing the amendment to the bill ordered that the defendant's demurrer theretofore filed should apply to the bill as amended.

The character of the bill is described in the opinion. The case was heard upon the demurrer by *Sheldon*, J., who made a memorandum of decision, which included the following: "The principal question argued, and one that goes to the merits of the bill, is whether the plaintiff's cause of action, as stated in the first paragraph of the bill and in the amendment, is a 'debt' within the meaning of R. L. c. 159, § 3, cl. 7. It seems to me that nothing more is stated therein than a bare cause of action for wholly unliquidated damages, which could not have been declared upon at law either as a debt or under any of the common counts or (under the old forms of pleading) in *indebitatus assumpsit*. . . . Accordingly the demurrer is sustained for the reason last stated."

A final decree was entered dismissing the bill for want of equity; and the plaintiff appealed.

*A. Browne*, for the plaintiff.

*W. Kittredge*, for the defendant.

RUGG, C. J. This is a suit to reach and apply property of the defendant in payment of an alleged debt in the nature of damages arising from the breach of a contract whereby the defendant agreed to act as the sole selling agent for the plaintiff for its stamp affixing machines in a designated territory, with many subsidiary obligations and stipulations upon each party. The contract contains no clause liquidating the damages in the event of a breach and they are wholly undetermined. The pivotal question is whether the unascertained damages arising from the breach of an executory contract is a "debt" within the meaning of that word in R. L. c. 159, § 3, cl. 7, as amended by St. 1902, c. 544, § 23, and St. 1910, c. 531, § 2.

The first statute upon that subject was St. 1851, c. 206. When the word "debt" was used at that time it hardly is conceivable that its signification could have been thought to be broad enough to include unliquidated damages like those claimed in the case at bar. Common law forms of action existed at that time, and the action of debt as distinguished from other actions sounding in contract had not been abolished. See St. 1851, c. 233, § 1; St. 1852, c. 312, § 1. That statute was amended by St. 1858, c. 34, and the two were consolidated in one of the clauses of § 2 of c. 113 of the General Statutes, which was re-enacted in Pub. Sts. c. 151, § 1, cl. 11. This was amended by St. 1884, c. 285, and re-enacted in R. L. c. 159, § 3, cl. 7. St. 1902, c. 544, § 23, made corrections of form only in the clause as it appeared in the Revised Laws. Up to this point there is no significant change shedding light upon the meaning of the word "debt." But the phrase of St. 1910, c. 531, § 2, is different in a vital particular. It amends the pre-existing law by adding, as a part of the same clause and not as an independent enactment, a provision that suits to reach and apply shares or interests in certain corporations may be maintained "whether the plaintiff is a creditor or not, and whether the suit is founded upon a debt or not." The Legislature chose by these words to distinguish between suits to collect a debt and all other kinds of actions, and to confine suits to reach and apply to debts alone. This manifests a decisive legislative intent that the word "debt" in the statute as now amended is not to include all actions founded upon a contractual liability, but only debts as distinguished from mere claims for damages.

There is nothing in our decisions at variance with this latest pronouncement by the Legislature as to the meaning attached by it to the word "debt." On the contrary, in numerous opinions expressions are found interpreting the word "debt" in this connection in harmony with the declaration of the Legislature of 1910 and as not broad enough to include such damages as are alleged here. The purpose of the statute is discussed at length in *Pettibone* v. *Toledo, Cincinnati, & St. Louis Railroad,* 148 Mass. 411. Speaking through Field, J., the court said at pp. 416, 417 that the Legislature had in mind what in England are called "creditor's bills," brought by "creditors who have obtained judgments at law, and who have in vain attempted at law to obtain satisfaction of the judgments, and who sue in equity for the purpose of reaching property which could not be taken on execution at law." The statute is spoken of as "this new remedy for the collection of a debt" whereby it is not required that "the debt should be reduced to a judgment, and that all legal remedies should be exhausted. . . . [and at pp. 418, 419] The word 'debt,' even in its broadest signification, implies that the consideration of the obligation of the debtor has been executed on the part of the creditor, and the payment of the debt discharges the obligation. . . . No case, however, appears in our reports where under this process . . . any claim for unliquidated damages for the breach of an executory contract [has] been reached and applied under this procedure." In the case at bar the consideration for the obligation of neither party in any proper sense has been executed. The complaint is that damages have accrued to the plaintiff because the defendant has prevented it from executing the consideration for the defendant's obligation. In *Snyder* v. *Smith,* 185 Mass. 58, 62, the court said: — "A bill brought under our statute is like a creditors' bill under general equity practice, though it may be brought by a single creditor for his own benefit without having obtained a judgment, and without making other creditors parties." To the same point are *Barry* v. *Abbot,* 100 Mass. 396, and *Davis* v. *Werden,* 13 Gray, 305. In *Draper* v. *Hollings,* 163 Mass. 127, 129, it was held that the bill could be maintained because it showed something more than "a mere right of action for a breach of contract."

The statute is remedial in nature and should not be given a constricted interpretation. But on the other hand it should not

be stretched to cover cases not within its fair import.  Doubtless the word "debt," as was said in *Gray* v. *Bennett,* 3 Met. 522, 526, "is of large import, including not only debts of record, or judgments, and debts by specialty, but also obligations arising under simple contract, to a very wide extent."  It is to be construed broadly rather than narrowly in the statute before us.  *Schlesinger* v. *Sherman,* 127 Mass. 206.  *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.* 151 Mass. 515.  *Ginn* v. *Almy,* 212 Mass. 486, 494. It may comprehend not only liquidated demands where there is an express or an implied promise to pay or an absolute duty raised by law to discharge, but also as was intimated in *Woodbury* v. *Sparrell Print,* 187 Mass. 426, an agreement for the payment of money which will require some calculation or determination of extraneous facts before its exact amount can be ascertained, provided the debtor has made a distinct and binding promise to pay. The plaintiff's claim in the case last cited was for loss of rent under a covenant in a lease that in case the lease was terminated by the lessor for a breach of covenant the lessee should be liable for all loss to the lessor from the premises remaining unleased for the remainder of the term.  The rent reserved was known.  There was a covenant to pay it.  Only the amount of deduction to be made for rent received from a new tenant made the net amount in any sense unliquidated.  There was a fixed amount due and definite deductions to be made.  It was with reference to these facts and an express agreement to pay money that it was said that "There is no reason why a liability founded on a judgment, or a formal covenant, or an instrument under seal, should in legal effect be any different, in regard to a fraudulent conveyance by a debtor, from other kinds of contractual liability, even if the amount to be paid is unliquidated."  This sentence means at most that a liability, although not reduced to a certainty and hence in that sense unliquidated, nevertheless may be a debt, provided that the consideration is executed and there is an express promise to pay and the precise sum of money due may be ascertained by simple mathematical calculation from known facts.  There is nothing in the decision or in the reasoning of the opinion to warrant the extension of the statute to the breach of an executory contract involving wholly unliquidated damages.  The claim in the case at bar resembles that of a deserted wife for support by her hus-

band, which, until there has been a decree by a court for a payment of money, cannot be enforced in a proceeding like this. *Willard* v. *Briggs*, 161 Mass. 58. *Shepherd* v. *Shepherd*, 196 Mass. 179. *Wells* v. *Wells*, 209 Mass. 282.

The word "debt" has never been made to include the simple possibility of being found responsible in damages for the breach of an executory contract where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered. The broad definition of "debt" given by Story, J., in *Carver* v. *Braintree Manuf. Co.* 2 Story, 432, was rejected by this court in *Child* v. *Boston & Fairhaven Iron Works*, 137 Mass. 516. Even the extreme interpretation given in *Fisher* v. *Consequa*, 2 Wash. C. C. 382, does not go to the length contended for here by the plaintiff, for there the amount of the debt was made definite by affidavit, and on that ground alone the plaintiff prevailed. The distinction between a debt and a mere liability to an action for damages for the breach of an executory contract has been well stated in *Tompkins* v. *Augusta Southern Railroad*, 102 Ga. 436, 446, *In re estate of Lambie*, 94 Mich. 489, 492, *Rietzloff* v. *Glover*, 91 Wis. 65, and *Kimpton* v. *Bronson*, 45 Barb. 618, 625, 626. Ordinarily it does not include "something to which the party may be entitled as damages in consequence of a failure to perform a duty or keep an engagement." Cooley, J., in *Lockhart* v. *Van Alstyne*, 31 Mich. 76, at 78. The remedy conferred by our statute often has been spoken of as in the nature of an equitable trustee process. *Sanger* v. *Bancroft*, 12 Gray, 365. *Crompton* v. *Anthony*, 13 Allen, 33, 37. *Chapman* v. *Banker & Tradesman Publishing Co.* 128 Mass. 478. *Rau* v. *Von Zedlitz*, 132 Mass. 164. But it is plain that none of these expressions have been intended to intimate that actions which could be begun at law by trustee process also could have been made the subject of suit under this statute. "All personal actions" with a few stated exceptions "may be commenced by the trustee process" under R. L. c. 189, § 1, but these words are of very different import from "suits by creditors to reach and apply, in payment of a debt," which is the phrase of St. 1910, c. 531, § 2. This difference indicates a sharp distinction between the kinds of obligation which may be enforced under the two acts.

The conclusion is that, both by the terms of the St. 1910,

c. 531, § 2, as well as under the previous decisions of this court and under generally accepted definitions of debt, the plaintiff's contention cannot be sustained.        *Decree affirmed with costs.*