IRA L. BRUYETTE *vs.* JOSEPH SANDINI & another.

Middlesex. May 13, 1935. — June 27, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Insurance,* Motor vehicle liability.

Before judgments are recovered by any of several persons injured through the operation of an automobile, the insurer under a policy of compulsory motor vehicle liability insurance covering that automobile may compromise, and pay up to the amount of the policy, claims of such of the injured persons as it sees fit.

BILL IN EQUITY, filed in the Superior Court on December 4, 1934.

A demurrer by the defendants was sustained by *Morton,* J. The plaintiff appealed.

*C. W. Proctor,* for the plaintiff.

*J. D. Sullivan,* for the defendants, submitted a brief.

PIERCE, J. This is an appeal from an order of the Superior Court sustaining the defendants' demurrer to the bill in equity on the grounds assigned that "The bill sets forth no cause for equitable relief" and "That the plaintiff is not such a party in interest as will entitle him to the relief prayed for."

The pertinent facts charged in the bill of complaint are, in substance, as follows: the Merchants Mutual Casualty

Company, hereinafter called the company, issued to the defendant Joseph Sandini a policy of insurance under G. L. (Ter. Ed.) c. 90, which was in full force and effect on January 29, 1934. By the terms of the policy the company contracted with Sandini to indemnify him to the extent of $10,000 "for claims against him for bodily injuries and death arising out of the operation by persons with his consent of an automobile upon the ways of the Commonwealth." On January 29, 1934, the automobile of Sandini, above referred to, with the consent of Sandini, was negligently operated on the ways of the Commonwealth and such negligent operation caused a collision between that automobile and another automobile operated by the plaintiff. This collision caused the death of the operator of the defendant Sandini's automobile, Raymond Phaneuf, and of Roy E. Tourtilotti and Bernard Marshall, and bodily injury to the plaintiff and to Irene Mullins and Edward White. Claims were made against Sandini by the last five individuals or their personal representatives, and final settlements effected by the company in behalf of Sandini in the cases of Tourtilotti and Marshall. Suits have been commenced by said Mullins and White against Sandini and negotiations for settlement are in progress. No administrator of the estate of Raymond Phaneuf had been appointed at the date of the filing of the bill of complaint, December 4, 1934, and the company on that date was not negotiating or attempting to negotiate a settlement of the plaintiff's claim "against it and the said Sandini and the estate of Raymond Phaneuf." The bill of complaint further charges that "there is grave danger that the defendant Merchants Mutual Casualty Company will pay out sums equal or nearly equal to the total amount of its insurance so that any judgment that he may obtain against Joseph Sandini or against the estate of Raymond Phaneuf will remain unsatisfied." The bill further charges, in substance, "that at the time of the accident the said Raymond Phaneuf was not on the business of Joseph Sandini but had taken the automobile with his consent"; that "said Joseph Sandini is of doubtful solvency and would be unable to

respond to a judgment if obtained against him by your plaintiff except so far as the insurance money might be applied to the payment thereof and that the said Raymond Phaneuf died insolvent or nearly insolvent and there are no assets in the estate save the right to be protected by the terms of the insurance policy" as above described.

The question for the decision of this court is, Has a person injured by the negligence of another such a right in the proceeds of a compulsory insurance policy as gives him a standing in court to enjoin the insurer from settling with other persons, who are injured in the same accident, to the exclusion of the plaintiff, and thereby exhausting the fund to which the plaintiff might otherwise look?

The contention of the plaintiff is that an insurer under a motor vehicle liability policy, the coverage of which is limited as to amount, may not settle less than all the multiple claims arising from an accident and thus prefer one person injured or one claim of such person above another, the classification being a discrimination against those persons with whom the insurance company for arbitrary and undisclosed reasons does not see fit to deal. The defendants suggest that this conception has its origin in a theory that the compulsory motor vehicle insurance act extended greater rights to a claimant to share in the benefits or proceeds of a motor vehicle liability policy than existed prior to this legislative act.

The defendants concede that the Legislature has within certain limits the right to prescribe and create certain conditions which form a part of a contract of motor vehicle insurance, and, as an example of the proper exercise of.that power, direct attention to the first enactment wherein the Legislature did exercise its power, which it expressed through the enactment of St. 1914, c. 464, under the title "An Act to regulate the payment of losses under contracts for casualty insurance."* They also bring to our attention the

---

* "Section 1. In respect to every contract of insurance made between an insurance company and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on

fact that prior to the enactment of St. 1914, c. 464, policies of motor vehicle insurance were contracts of indemnity and gave no rights to the benefits of the policy to any person injured by the negligent operation of the insured motor vehicle, *Davison* v. *Maryland Casualty Co.* 197 Mass. 167, and that the insurer could be called upon to indemnify the person named as the assured only in the event he had satisfied a judgment against him; and they point out that the changes made by the original statute are *"First:* It made a policy of motor vehicle insurance one of liability rather than indemnity, that is, the responsibility of the insuring company became fixed upon final judgment being rendered against the assured. This made the company liable immediately upon such an event taking place and did not require the satisfaction of the judgment as a precedent to the fixing of the responsibility of the insuring company. *Second:* It made the liability of an insurance company absolute upon the happening of an accident. *I.e.,* in the event a valid policy of motor vehicle insurance was in effect at the time of the happening of the accident that date was the determining factor in deciding whether or not there was any coverage under the policy. *Third:* It gave the holder of a judgment against a person holding a policy of motor vehicle insurance the right to proceed directly against the insuring company providing the judgment was not satisfied within thirty days. This was an equitable

---

account of a casualty covered by such contract of insurance, the liability of the insurance company shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, occasioned by said casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.

"Section 2. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

right to reach and apply the proceeds [of the policy] of the insurance company to satisfy the judgment." The defendants further draw to the attention of the court the fact that the full tenor and effect of the original law are at the present time reflected in our statutes. G. L. (Ter. Ed.) c. 90, § 34A, paragraph 4, reaffirms the original statute (St. 1914, c. 464) and makes a policy of motor vehicle insurance one of liability, rather than indemnity; c. 175, § 112, reaffirms the original statute and makes liability under such a policy absolute when a loss occurs; and c. 214, § 3 (10), reaffirms the equitable rights of a judgment creditor to have a judgment satisfied out of the proceeds of a policy of motor vehicle insurance.

It is apparent that the compulsory motor vehicle insurance law did not give to a claimant, in terms, any greater or further rights to the benefits of a policy of motor vehicle liability insurance than existed prior to the enactment of the compulsory motor vehicle insurance law. Such interest as one standing in the position of the plaintiff might have is no more substantial than was given by St. 1914, c. 464.

Respecting the effect of this legislation this court said in *Lorando* v. *Gethro*, 228 Mass. 181, at page 187: "A further important feature of the statute is to give to the person injured by the conduct, against loss from which the assured is insured by his policy of insurance, a certain beneficial interest in the proceeds of that policy. It does not enlarge nor modify in any respect the substantial liability created by the contract of insurance. It merely enables the person suffering the initial damages, out of which grows the loss to the insured, to acquire a lien against the loss and the right to damages or indemnity arising under the policy and to enforce it in his own name." See also *Mathewson* v. *Colpitts*, 284 Mass. 581, where the court said at page 585: "the plaintiff could not establish any right to share in the assets of the insurance company until she had recovered the equivalent of a judgment against the defendant. Until such recovery, her claim against the insurance company was inchoate, or potential only. The statute gives her something in the nature of a lien against the money due

under the insurance policy as security for the collection of that judgment." Interpreting these opinions and St. 1925, c. 346, § 4, now G. L. (Ter. Ed.) c. 175, § 113A, the plaintiff contends that the intention of the Legislature was to provide a fund for the compensation of the public rather than for safety from execution of automobile drivers; that said purpose when enacted into law was a valid exercise of the police power on the theory that the public was to receive compensation alike, "except in so far as . . . classifications . . . were distinctly and positively set forth in the act"; that there was no intention that certain members of the public should be preferred above others; and that the administration of the law should be left to the officers of the State rather than to the whim and caprice of an adjuster for an insurance company.

The defendants contend that after the happening of a motor vehicle accident, and prior to the rendering of a judgment in favor of the injured person, that person's interest in the fund is purely personal; that he has no property right in the assets of the insurance company; and that equity will not intervene to aid his inchoate interest against the insurance company, citing *Kelley* v. *Board of Health of Peabody*, 248 Mass. 165, wherein the court said: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property." The defendants, interpreting St. 1914, c. 464, and the amendment contained in G. L. (Ter. Ed.) c. 175, § 113A, contend that it is apparent that the Legislature intended to establish a fund through the instrumentality of a motor vehicle liability policy, a motor vehicle liability bond, or cash or other securities out of which might be satisfied judgments rendered against negligent motor vehicle operators, *Guzenfield* v. *Liberty Mutual Ins. Co.* 286 Mass. 133, 136; and that it fixed this fund in the amount of $10,000 for injuries to or death of more than one person and $5,000 for injuries to or death of one person. It is suggested that if the fund so established is insufficient the remedy should be found in legislation. The defendants further suggest that it "cannot be seriously contended that

in the event the registered owner of a motor vehicle elected to avail himself of that provision of the statute which permits him to furnish cash or other securities by deposit with the Secretary of State, rather than a policy of motor vehicle liability insurance, or a bond that he or the office of the Secretary of State could be restrained from utilizing the funds so created as a means of compromising any claim arising out of the negligent operation of a motor vehicle even to the extent of exhausting the entire fund." This position of the defendants finds support in *Turk* v. *Goldberg*, 91 N. J. Eq. 283, where under very similar provisions of New Jersey Public Laws, 1916, p. 283, the New Jersey court held (pages 286–287) that the act "merely proposes to give those who suffer injury through the bus owner, a special fund from which to collect, in case the bus owner is financially unable to respond in damages. What the legislature has said in effect, is that the policy shall be for the benefit of every person . . . who may establish his claim by judgment against the bus owner . . . . Had it intended that the amount of the policy should be shared proportionately by all persons who . . . might sue and recover judgment against the bus owner, it would have said so . . . . To hold that the policy is for the benefit of all injured persons *pro rata*, would make it necessary for the insurance company to ascertain, before it could safely pay anyone, how many persons might have claims thereon . . . and what the total amount of judgments which might be presented would be. . . . In the absence of any statutory provision to the contrary, such liens have priority in the order in which they mature and are presented to the insurance company."

It is to be noted that the New Jersey statute (P. L. 1916, c. 136, § 2) provides that the required insurance policy shall be "for the benefit of every person suffering loss, damage or injury." Our statute, before the enactment of St. 1925, c. 346, § 4, G. L. (Ter. Ed.) c. 175, § 113A, was less broad than the New Jersey statute referred to, in that the insurance policy might contain provisions and qualifications which might make the policy void or voidable. The posi-

tion of the defendants is further supported by *Bartlett* v. *Travelers Ins. Co.* 117 Conn. 147. We think the settlement of part of multiple claims is permissible under the policy and the statute, does not constitute an inequitable preference, and is not contrary to public policy. See *Douglas* v. *United States Fidelity & Guaranty Co.* 81 N. H. 371.

*Order sustaining demurrer affirmed.*