862 F.2d 896
 Bankr. L. Rep. P 72,501
In re RARE COIN GALLERIES OF AMERICA, INC., Debtor.
John J. REGAN, etc., Plaintiff, Appellee,
v.
VINICK & YOUNG, etc., et al., Defendants, Appellants.
International Surplus Lines Insurance Company, et al.,
Defendants, Appellees.
In re RARE COIN GALLERIES OF AMERICA, INC., Debtor.
John J. REGAN, etc., Plaintiff, Appellee,
v.
VINICK & YOUNG, etc., et al., Defendants, Appellees.
International Surplus Lines Insurance Company, Defendant, Appellant.
 Nos. 88-1451, 88-1504.
 United States Court of Appeals,
First Circuit.
 Heard Oct. 4, 1988.
Decided Nov. 30, 1988.
 
 Sharon R. Burger, with whom Edward P. Leibensperger, Donald R. Peck and Nutter, McClennen & Fish, Boston, Mass., were on brief, for Vinick & Young, etc., et al.
 Jerome M. Leonard, with whom Ropes & Gray, Boston, Mass., was on brief, for Intern. Surplus Lines Ins. Co.
 Lawrence G. Green, with whom Neill E. Silverman and Perkins, Smith, Arata & Howard, Boston, Mass., were on brief, for John J. Regan.
 Before COFFIN, Circuit Judge, TIMBERS,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellants Vinick & Young, Certified Public Accountants, Arnold W. Vinick, individually (collectively "Vinick & Young" or "the accountant"), and International Surplus Lines Insurance Company ("ISLIC" or when joined with Vinick & Young, "the appellants"), appeal from a preliminary injunction entered February 18, 1988 in the District of Massachusetts, Andrew A. Caffrey, Senior Judge, on the motion of appellee John J. Regan ("the trustee"), he being the Chapter 7 bankruptcy trustee of debtor Rare Coin Galleries of America, Inc. ("RCG").
 
 
 2
 The court granted the relief requested on the grounds that the trustee had demonstrated a reasonable likelihood of success on the merits and the balance of risk of irreparable harm weighed in favor of the trustee. Part One of the injunction enjoins ISLIC from using in any manner the proceeds of a $250,000 liability insurance policy it had issued to Vinick & Young, thus barring the payment of any settlement or use of the proceeds to fund Vinick & Young's defense in the instant action. Part Two permits the trustee to reach and apply the policy proceeds to satisfy any eventual judgment it might recover from Vinick & Young. Our jurisdiction rests on 28 U.S.C. Sec. 1292(a)(1) (1982).
 
 
 3
 We find that there are three principal issues on appeal. First, appellants argue that the trustee lacks standing to bring the underlying action for damages. Second, there is a question, under Part One of the injunction, whether the balance of hardship favors appellants, since Massachusetts law limits the legal remedies appellee may have against the proceeds of the liability insurance policy. Third, appellants urge that we vacate Part Two of the injunction because the remedy of a bill to reach and apply is not available at this stage of the proceedings under Massachusetts law on the facts of the instant case.
 
 
 4
 We hold that, although the trustee has standing to bring the underlying action, the district court erred in granting both parts of the injunction. We vacate the injunction.
 
 I.
 
 5
 We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 6
 RCG was a company specializing in buying, selling and investing in rare coins for its customers. Misappropriation by principals of RCG led the firm into bankruptcy. On October 14, 1986, RCG filed for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Massachusetts, Eastern Division. Appellee John J. Regan subsequently was appointed bankruptcy trustee. The bankruptcy proceeding later was converted to a Chapter 7 liquidation proceeding. The district court has withdrawn the case from the bankruptcy court pursuant to 28 U.S.C. Sec. 157(d) (Supp. IV 1986).
 
 
 7
 On May 4, 1987, the trustee commenced the instant adversary proceeding in the district court. The complaint named Vinick & Young as defendants. Vinick & Young had served as RCG's accountant and auditor. As part of its duties, the accountant had certified four Invoice Liquidation Reports ("the reports"). These reports summarized rare coin transactions conducted by RCG on behalf of its customers. The accountant certified that the reports conformed with generally accepted accounting principles. The complaint alleged against Vinick & Young negligence, breach of contract, negligent misrepresentation and unfair and deceptive acts or practices under Mass.Gen.Laws. ch. 93A, Secs. 2, 11 (1984). The complaint sought damages for (1) the cost of the accountant's services, (2) the cost of commissions RCG paid to financial planners, (3) the misappropriation of assets by RCG principals, (4) the administrative costs of bankruptcy, and (5) the cost to the estate of an $11.8 million proof of claim filed by the Federal Trade Commission ("FTC") on behalf of RCG's public consumer creditors.
 
 
 8
 The complaint also named ISLIC and Rollins, Burdick and Hunter of Massachusetts, Inc. ("the broker"), Vinick & Young's liability insurance broker, as trustee defendants. ISLIC had issued to Vinick & Young a professional liability insurance policy ("the policy") limiting ISLIC's liability to Vinick & Young to $250,000 per claim, or in the aggregate, per year. This liability limit included all damage claims incurred by the accountants and all "claims expenses", defined as
 
 
 9
 "any and all costs, charges, fees and/or expenses incurred by [ISLIC] in investigating, defending, negotiating and/or otherwise attending to a claim, or any litigation arising therefrom".
 
 
 10
 Thus, the complaint named ISLIC and the broker only "so that the plaintiff's reach and apply and injunction motions may be enforced against the subject insurance policy".
 
 
 11
 Simultaneously with the filing of the complaint, the trustee filed a motion for a temporary restraining order ("TRO"). The proposed TRO would "enjoin[ ] [ISLIC and the broker] from paying, disposing of, or otherwise encumbering ... any insurance policy issued or brokered by [ISLIC and the broker] for the benefit of [Vinick & Young]". The proposed TRO also would authorize the trustee to reach and apply the proceeds of any insurance policy issued by ISLIC to Vinick & Young in satisfaction of any subsequent judgment obtained by the trustee against Vinick & Young. These two parts of the proposed TRO eventually became the two parts of the preliminary injunction.
 
 
 12
 The district court granted the TRO. On May 15, 1987, the court, upon the stipulation of ISLIC and the trustee, extended the TRO until further order of the court. On October 15, 1987, Vinick & Young moved to modify the TRO to allow ISLIC to use the policy proceeds to pay defense costs. The court denied this motion on December 21, 1987. Two days later the trustee filed an application for a preliminary injunction. On February 18, 1988, following a hearing, the court entered the preliminary injunction, incorporating the terms of the TRO. ISLIC and Vinick & Young now appeal from the preliminary injunction.
 
 II.
 
 13
 As a preliminary matter, we are constrained to comment on the district court's failure to comply with Fed.R.Civ.P. 52(a) which requires that, before the court may enter a preliminary injunction, it must "find the facts specially and state separately its conclusions of law" upon which the injunction is based, as it is required to do when trying a case upon the facts without a jury.[1]
 
 
 14
 In the instant case the findings of fact and conclusions of law consist of five lines on the final page of the transcript of the preliminary injunction hearing reading as follows:
 
 
 15
 "O.K. I find that there is a reasonable likelihood the plaintiff will succeed on the merits of this case and that the balance of risk of irreparable harm weighs in favor of the plaintiff and I hereby grant plaintiff's application for preliminary injunction."
 
 This is clearly inadequate.[2]
 
 16
 We emphasize that it is of vital importance that the court scrupulously follow the requirements of Rule 52(a). The burden is not a heavy one. "[T]he judge need only make brief, definite, pertinent findings and conclusions upon the contested matters". Fed.R.Civ.P. 52(a) Advisory Committee Note (1946 Amendment); see also Kelley v. Everglades Drainage Dist., 319 U.S. 415, 422 [63 S.Ct. 1141, 1145, 87 L.Ed. 1485] (1943) ("[T]here must be findings ... sufficient to indicate the factual basis for the ultimate conclusion."). Under the current version of the Rule, the court even may make these findings orally from the bench.
 
 
 17
 Ordinarily, in view of the absence of findings, we would remand to the district court with directions to comply with Rule 52(a). Since there appears to be no dispute as to the facts and the appeal turns primarily on questions of law, we shall turn directly to the merits.
 
 III.
 
 18
 The law of this Circuit limits review of the granting of a preliminary injunction to determining if the district judge abused his discretion. E.g., Romero Feliciano v. Torres Gaztambide, 836 F.2d 1, 2 (1st Cir.1987); Collazo Rivera v. Torres Gaztambide, 812 F.2d 258, 259 (1st Cir.1987). " '[A]pplication of an improper legal standard in determining the likelihood of success on the merits.... [or] misapplication of the law to particular facts is an abuse of discretion.' " Planned Parenthood League of Mass. v. Bellotti, supra, 641 F.2d at 1009 (quoting Charles v. Carey, 627 F.2d 772, 776 (7th Cir.1980) (citations omitted)).
 
 
 19
 Appellants argue that the district judge abused his discretion in finding that the trustee was likely to succeed on the merits despite the trustee's lack of standing to assert the instant claims. Appellants contend that the trustee is asserting claims on behalf of the customers of RCG (who are creditors of the estate), and that such claims belong to the customers, not the estate. If this were so, the trustee would be acting beyond the scope of his powers under the Bankruptcy Code. Section 704(1) of the Bankruptcy Code, 11 U.S.C. Sec. 704(1) (Supp. IV 1986), gives the trustee the power to "collect and reduce to money the property of the estate". 11 U.S.C. Sec. 704(1) (Supp. IV 1986). Causes of action belonging to the debtor are included as property of the estate under 11 U.S.C. Sec. 541(a)(1) (1982). E.g., In re Ozark Restaurant Equip. Co., 816 F.2d 1222, 1225 (8th Cir.), cert. denied, 484 U.S. 848 [108 S.Ct. 147, 98 L.Ed.2d 102] (1987); 4 Collier on Bankruptcy p 541.10, at 541-63. The trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them. E.g., Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 [92 S.Ct. 1678, 1688, 32 L.Ed.2d 195] (1972); In re Ozark, supra, 816 F.2d at 1229-30; 4 Collier on Bankruptcy p 541.10, at 541-70.
 
 
 20
 Appellants contend that the claims filed by the trustee belong solely to the creditors, but an examination of the complaint shows that this is not so. In each of the four counts set forth in the complaint the trustee alleges damage to the debtor.[3] The four counts (negligence, breach of contract, negligent misrepresentation and the statutory claim for unfair or deceptive practices) all clearly could have been asserted by the debtor, RCG. The trustee steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of actions, which become property of the estate. In re Ozark, supra, 816 F.2d at 1225. The confusion may stem from the trustee's repeated emphasis upon the assertions that the accountant's wrongdoing caused RCG's customers to lose money. This emphasis on the customers' claims appears to result from the $11.8 million claim filed on their behalf against the estate (the largest against the debtor) and from the concern that the estate may be held jointly and severally liable with the accountant in any eventual actions commenced by the customers. It is clear that, despite the emphasis on the customers' claims, the trustee is asserting claims that belong to the estate.
 
 IV.
 
 21
 We turn first to Part One of the injunction. In granting the preliminary injunction, the court found that the balance of harm favored the trustee. We hold, however, that Massachusetts law limits the remedies available against the proceeds of the policy to such an extent that the balance of harm clearly favors appellants. Accordingly, since the court abused its discretion, Part One of the injunction enjoining ISLIC from depleting the policy proceeds must be vacated.
 
 
 22
 This issue turns on the provisions of the policy. The policy contains a ceiling limiting the obligations of ISLIC to $250,000 for each claim, or $250,000 in the aggregate, for each year. Included in this limitation are both damage claims owed by Vinick & Young and all expenses incurred in connection with such claims. See page 899, supra, of this opinion. Thus, under this limitation ISLIC will pay Vinick & Young all of their damages upon a claim only if the sum of the damages and the claims expenses is less than $250,000. If the sum of damages and claims expenses exceeds $250,000, the policy obligates ISLIC to pay as policy proceeds covering Vinick & Young's damages, only the amount of proceeds remaining after all claims expenses are subtracted from the $250,000 policy ceiling.
 
 
 23
 The trustee challenges this interpretation of the policy. He contends that the policy does not provide that claims expenses have priority over a damage claim. Leaving aside whether such a priority is the logical sequence of policy coverage, we have interpreted this type of policy in the above manner, applying Massachusetts law. Geehan v. Trawler Arlington, Inc., 547 F.2d 132, 135 (1st Cir.1976). In Geehan, a creditor with a judgment of more than $55,000 commenced an action to reach and apply the proceeds of two insurance policies issued by separate insurers. The primary insurer was liable to pay the first $25,000 of the judgment. That insurer, however, wanted to apply against the liability limit both the damages and $17,174.50 in claims expenses.[4] The secondary or "excess" insurer objected to this interpretation because its excess liability would have increased by the amount of the claims expenses. Id. at 133.
 
 
 24
 The court in Geehan held in favor of the primary insurer. The court stated that under Massachusetts law "a liability contract is purely bilateral, with the insurer's duties running only to the insured", and not to non-parties, such as an "excess insurer or injured plaintiff". Id. at 134-35 (citing Goldstein v. Bernstein, 315 Mass. 329, 333, 52 N.E.2d 559, 561 (1943)). To have interpreted the policy in the manner suggested by the excess insurer would have required the insured to reimburse the insurer for the claims expenses out of its own funds. This would have been "construing the policy to the advantage of the third party ..., but to the disadvantage of the insured". Id. at 135. The court also stated that, had the insured successfully defended its claim, it still would have been liable to the insurer for the claims expenses, rendering nugatory one of the protections for which it had purchased the policy, namely, coverage of legal and other expenses related to unsuccessful claims. Id.
 
 
 25
 The trustee attempts to distinguish Geehan on the ground that, unlike the instant case, Geehan involved a final judgment and not a preliminary injunction. This is a difference without a distinction, since the importance of Geehan is its teaching concerning the priorities among damage claims and claims expenses, and their relationship to the policy liability limits. Regardless of whether or not a party is seeking to execute a judgment, as in Geehan, or seeks a preliminary injunction, as in the instant case, he is entitled to no more than those rights given him by Massachusetts law and the language of the policy. We follow Geehan and hold that, under Massachusetts law and the language of the policy in the instant case, the amount of the proceeds available to pay a damage claim is the amount of proceeds remaining after all claims expenses have been subtracted from the policy ceiling of $250,000.
 
 
 26
 This interpretation applies equally to Vinick & Young and anyone (including the trustee) who obtains a judgment against Vinick & Young and attempts to reach and apply the policy proceeds. Under Massachusetts law, a third party has no more rights against the insurer than the insured. E.g., Foshee v. Insurance Co. of N. Am., 359 Mass. 471, 472, 269 N.E.2d 677, 678 (1971); O'Kane v. Travelers Ins. Co., 337 Mass. 182, 183-84, 148 N.E.2d 397, 399 (1958); Klefbeck v. Dous, 302 Mass. 383, 384, 19 N.E.2d 308, 309 (1939). If the trustee should obtain a judgment against Vinick & Young, it will be entitled to reach and apply only those proceeds remaining after the claims expenses have been paid.
 
 
 27
 It is because of this limitation that we believe that the district court abused its discretion in finding that the balance of harm favors the trustee. We fail to see on this showing what harm the trustee would have sustained if the court had denied the motion to grant the preliminary injunction. The trustee argues that the injunction prevents appellants from "depleting" or "dissipating" the proceeds in defending Vinick & Young. Yet, the trustee admits in his brief that reasonable costs incurred in defending Vinick & Young are to be included as claims expenses under the policy limitation. As we have stated above, the law also requires this result. Indeed, at the very least, as long as such costs are reasonable, they are to be applied to the policy limit regardless of whether or not such application "depletes" or "dissipates" the proceeds.
 
 
 28
 In fairness to the trustee, we assume that he is arguing that the injunction really guards against the application of unreasonable defense costs to the policy limit. Yet, nowhere has the trustee shown that ISLIC or Vinick & Young have inflated or incurred unreasonable fees. Any suggestion that they have is at this point pure speculation. Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction. E.g., Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C.Cir.1985), cert. denied, 476 U.S. 1114 [106 S.Ct. 1968, 90 L.Ed.2d 653] (1986); Dan River, Inc. v. Icahn, 701 F.2d 278, 283 (4th Cir.1983). Without a showing that appellants are incurring unreasonable defense costs, the trustee is not sustaining any cognizable harm. With or without the injunction, he will be entitled to no more than the policy proceeds left after the claims expenses are paid.
 
 
 29
 Appellants, on the other hand, are sustaining significant harm from the injunction. First, at the very least, the contractual relationship between ISLIC and Vinick & Young has been disrupted. As it now stands, the injunction makes no provision for the payment of Vinick & Young's defense costs, one of the very reasons Vinick & Young purchased the policy and paid a premium for it. At the moment Vinick & Young is funding at least a portion of its own defense, using funds or credit it might have applied elsewhere (or invested for a return). The injunction also leaves ISLIC with the contractual obligation to defend Vinick & Young, but prevents ISLIC from using policy proceeds to do so. ISLIC either must incur costs greater than the $250,000 liability limit in the hope that it later may be able to recoup these costs out of the proceeds, or it must shift the defense costs to Vinick & Young, with the result to Vinick & Young referred to above.
 
 
 30
 Second, the injunction prevents ISLIC or Vinick & Young from using policy proceeds to settle any other claim. Courts have implicitly recognized the value of this right. We, for example, have recognized the general right of insurers to settle claims on a "first come, first served" basis, even if one settlement may be to the detriment of later potential claimants to a limited fund. Voccio v. Reliance Ins. Cos., 703 F.2d 1, 3 (1st Cir.1983). The Supreme Judicial Court of Massachusetts has affirmed the denial of a motion to grant a preliminary injunction to prevent the exhaustion of limited insurance proceeds through the payment of settlements. Bruyette v. Sandini, 291 Mass. 373, 197 N.E. 29 (1935). Since we believe that ISLIC and Vinick & Young are sustaining significant harm from this injunction, and the trustee has not shown that he will sustain any harm without it, the court abused its discretion in entering Part One of the preliminary injunction.
 
 
 31
 Finally, we note that the trustee makes much of the court's power to enter a preliminary injunction to maintain the status quo and protect the damage remedy. E.g., Teradyne, supra, 797 F.2d at 53; Roland Machinery Co. v. Dresser Indus., 749 F.2d 380, 386 (7th Cir.1984); Productos Carnic, S.A. v. Central Am. Beef and Seafood Trading Co., 621 F.2d 683, 686 (5th Cir.1980). We have no quarrel with this principle, but it does not override the requirement that the balance of harm must favor the plaintiff. That is not the situation in the instant case.
 
 V.
 
 32
 We now turn to Part Two of the injunction. This part of the injunction permits the trustee to "reach and apply all proceeds from any insurance policy" issued by ISLIC to Vinick & Young in satisfaction of any judgment in the underlying action. Since we believe that under Massachusetts law the remedy of a bill to reach and apply[5] is not available at this stage of the proceedings, Part Two of the preliminary injunction also must be vacated.
 
 
 33
 Under Fed.R.Civ.P. 64, a district court may grant any provisional remedy available under the law of the state in which the court is held, unless the remedy is inconsistent with any federal statute or the Constitution. Fed.R.Civ.P. 64; 11 Wright & Miller, Federal Practice and Procedure Sec. 2931. The district court here was within its power to enter an injunction containing a bill to reach and apply if such remedy was available under Massachusetts law and was not inconsistent with the Constitution or federal statutes.
 
 
 34
 Massachusetts law provides for two types of bills to reach and apply. The first type is a traditional remedy available to judgment creditors who have been unable to execute on the defendant's assets. Wax v. Monks, 327 Mass. 1, 3, 96 N.E.2d 704, 706 (1951); First Nat'l Bank v. Nichols, 294 Mass. 173, 182-83, 200 N.E. 869, 874 (1936). There is an exception: the plaintiff need not obtain a judgment first if the defendant is insolvent. First Nat'l Bank, supra, 294 Mass. at 183, 200 N.E. at 874 (citing Case v. Beauregard, 101 U.S. 688, 690 (1879)). This remedy is not available in the instant case because the trustee has not obtained a judgment nor has he made any showing that Vinick & Young is insolvent.
 
 
 35
 Nevertheless, there is a series of statutory bills to reach and apply. Only one is arguably available.[6] A creditor can reach and apply in payment of any "debt" a variety of a debtor's interests that are unavailable for ordinary attachment or levy. Mass.Gen.L. ch. 214, Sec. 3(6) (1986). The Supreme Judicial Court has held that included within the definition of interests subject to this remedy are certain insurance contracts. Lewenstein v. Forman, 223 Mass. 325, 111 N.E. 962 (1916). There must be, however, an underlying "debt" as defined in the statute running from the defendant to the plaintiff before this remedy is available. H.G. Kilbourne v. Standard Stamp Affixer Co., 216 Mass. 118, 119, 103 N.E. 469, 470 (1913).
 
 
 36
 In Kilbourne the court held that under an earlier version of Sec. 3(6) the term "debt", although broadly construed, did not include a pending breach of contract suit not reduced to judgment:
 
 
 37
 "The word 'debt' has never been made to include the simple possibility of being found responsible in damages for the breach of an executory contract where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered."
 
 
 38
 Kilbourne, 216 Mass. at 122, 103 N.E. at 471. The instant action contains a breach of an executed contract claim as well as tort and statutory claims, but there appears to be no reason why this rule would not extend to such actions as well. A comparison of the statute currently in force and the statute as it read when construed by the Kilbourne court, compare Mass.Gen.L. ch. 214, Sec. 3(6) (1986) with 1910 Mass Acts 480-81, shows them to be identical in all pertinent respects. See also Anderson Foreign Motors, Inc. v. New England Toyota Distrib., Inc., 492 F.Supp. 1383, 1385 n. 3 (D.Mass.1980); Daley v. Ort, 98 F.Supp. 151, 152 (D.Mass.1951).
 
 
 39
 Since the instant action contains contract, tort and statutory claims not reduced to judgment, the remedy of a statutory bill to reach and apply is not available at this stage of the proceedings under Massachusetts law. The traditional common law bill also is not available. Accordingly, the district court abused its discretion. Part Two of the injunction must be vacated.
 
 
 40
 Although the parties have raised other issues, we need not reach them in view of the foregoing disposition of the appeal.
 
 VI.
 To summarize:
 
 41
 While we disapprove of the district court's failure to comply with Rule 52(a) which requires the court to make findings of fact and conclusions of law before entering a preliminary injunction, we nevertheless decide this appeal on the merits.
 
 
 42
 We hold that, although the trustee has standing to assert the underlying action, the court abused its discretion in finding that the balance of hardship favors the trustee in entering Part One of the preliminary injunction. We also hold that the court abused its discretion in entering Part Two of the injunction because the remedy of a bill to reach and apply is not available under Massachusetts law at this stage of the proceedings. We therefore vacate the preliminary injunction.
 
 
 43
 VACATED.
 
 
 
 *
 Of the Second Circuit, sitting by designation
 
 
 [1]
 Fed.R.Civ.P. 52(a) provides in relevant part: "In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon ... and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action." (emphasis added)
 
 
 [2]
 In this Circuit before granting a preliminary injunction a district court must find "(1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction". Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51-52 (1st Cir.1986) (citing Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir.1981))
 
 
 [3]
 Each of the four counts in the complaint alleges damage to the debtor:
 "25.... Consequently, the Debtor has been substantially damaged as a direct and proximate result of the negligence of [Vinick & Young].
 ....
 
 
 [29]
 Consequently, the Debtor has been substantially damaged as a direct and proximate result of the breach of contract of [Vinick & Young]
 ....
 
 
 [37]
 Consequently, the Debtor has been substantially damaged as a direct and proximate result of the negligent misrepresentation of [Vinick & Young]
 ....
 
 
 [39]
 [U]nfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, Secs. 2 and 11 ... directly and proximately caused substantial damage to the Debtor."
 (emphasis added).
 
 
 [4]
 This application to the policy limit of both the damage award and all claims expenses, with the claims expenses taking priority, is precisely what ISLIC intends to do should the trustee obtain a judgment against Vinick & Young in the instant case
 
 
 [5]
 The bill to reach and apply has been defined as
 "a prejudgment security device which is equitable in nature: it seeks either to restrain the defendant's disposition of his own intangible property, and then to reach and apply such property to satisfy the plaintiff's claim, or to restrain a third party's disposition of the defendant's intangible or equitable property, and then to reach and apply that property to satisfy the plaintiff's claim."
 Gilleran, Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply, 69 Mass.L.Rev. 156, 169 (1984). A second type of bill to reach and apply is available to judgment creditors, as we indicate below.
 
 
 [6]
 The other three are (1) Mass.Gen.L. ch. 214, Sec. 3(7), which permits actions to reach and apply certain shares or interests in corporations; (2) Mass.Gen.L. ch. 214, Sec. 3(8), which permits actions to reach and apply certain interests fraudulently conveyed by a debtor or third person to defeat creditors; (3) Mass.Gen.L. ch. 214, Sec. 3(9), which permits actions to reach and apply the obligation of an insurance company arising out of certain motor vehicle insurance policies