Fecteau, J.
By this action, the plaintiff seeks to reach and apply the obligation of an insurer under a motor vehicle insurance policy to satisfy a judgment recovered in District Court against an insured third party as compensation for bodily injury resulting from an automobile accident. The defendant denies liability on the grounds that it is entitled to disclaim coverage under the policy due to the lack of cooperation of the insured and that the alleged accident was fraudulent. The plaintiff moved, in limine, for an order excluding the introduction of any evidence by the defendant concerning the allegation of fraud on the grounds that the doctrines of res judicata and issue preclusion precluded the defendant from raising the issue of fraud due to the entry of default judgment. The motion was taken under advisement and the evidence received de bene, subject to a motion to strike. Trial was held before me sitting without jury on July 29 and August 7, 1996.
Upon consideration of all the evidence, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. OnMay27, 1992, the plaintiff PhuongT. Nguyen (“plaintiff’) was a passenger in an automobile then owned and operated by Tong V. Nguyen (“Nguyen”). The motor vehicle was insured under a Massachusetts motor vehicle insurance policy (5th edition) which had been issued by the defendant Liberty Mutual Insurance Company (“Liberty”). In addition to compulsory coverage, the policy carried optional bodily injury coverage in the amount of $15,000 per person and $30,000 per accident. (Ex. 1, 2.)
2. On May 27, 1992, a member of the Worcester Police Department responded to the report of an accident between the Nguyen vehicle and one operated by Chuong Van Le. The accident occurred as both vehicles were entering a rotary at Washington Square in Worcester, Massachusetts. The Nguyen vehicle entered the rotary to the right of the Van Le vehicle and contact between the vehicles occurred at the front or front-left of the Nguyen vehicle and the right side of the Van Le vehicle. (Ex. 9.) Photographs show physical damage to the Van Le vehicle on the right side at one or more points. Although photographs were taken of the Nguyen vehicle, and they show physical damage at its rear and right rear, none show the front or left front of this vehicle. (Ex. 25-29.)
3. Liberty was notified of plaintiffs claim through communications made by her attorney, including a request for and the completion and return of a Personal Injury Protection (“PIP”) form. On February 17, 1993, PIP benefits were paid by Liberty to the plaintiff in the amount of $2,000. (Ex. 3, 7.)
4. On April 6, 1993, following an investigation of the accident and the damages claimed by the plaintiff, Liberty made an offer in the amount of $6,800 to settle the plaintiffs bodily injury claim. (Ex. 8.) This offer was rejected. On May 5, 1993, Liberty informed plaintiffs counsel that their office had received two other bodily injury claims as a result of the accident in question. Liberty stated that it was under the belief that each of the additional two claimants would be settling for approximately $10,000, thus leaving approximately $ 10,000 for negotiation of the plaintiffs claim. (Ex. 10.)
5. The plaintiff commenced suit against Nguyen, Liberty’s insured, on or about May 21, 1993. (Ex.l 1.) Service of process was obtained on the insured by service upon the Registrar of Motor Vehicles. (Ex. 12.) Plaintiffs counsel informed Liberty on July 13, 1993, that Nguyen defaulted in the District Court and that the plaintiff was moving to assess damages. (Ex. 13, 14.) On September 17, 1993, a default judgment in the amount of $25,000 was entered in favor of the plaintiff. (Ex. 14.) Liberty had not assigned the defense of this case to any lawyer. As well, Liberty made no effort to remove the default following its receipt of notice from plaintiffs counsel of their intention to move for an assessment of damages. Liberty sent no notice to Nguyen informing him of its intention to disclaim coverage until its letter dated October 26, 1993. This letter was sent after the entry of the default judgment and referenced another lawsuit arising from this same accident. (Ex. 23.)
•6. The only contact which appears to have occurred between Liberty and its insured were an operator’s report form sent to Nguyen who completed, signed and returned the written report to Liberty; a letter from Liberty to Nguyen dated March 24, 1993, which introduced him to the name of the adjuster assigned to handle the file and a request that he contact her to give her a recorded statement; a letter sent certified mail, return receipt requested, from Liberty to Nguyen dated June 30, 1993, in which a different adjuster informed him of his duty to cooperate and requested that he call to make arrangements to meet in person to provide a recorded statement; and a certified letter, return receipt requested, from Liberty to Nguyen dated October 26, 1993, following the entry of judgment of default and assessment of damages. In the October 26 *252 letter, Liberty informed Nguyen that coverage for the accident was being disclaimed due to his lack of cooperation by failing to notify Liberty of his having been served with process and for his lack of contact with Liberty after its several attempts to reach him. (Ex. -18, 20-24.) Notwithstanding signed mail receipts, the certified letters were addressed to 23 Kilby St. Apt 2, whereas the address listed for Nguyen on both the police accident report and Nguyen’s own report was 22 Kilby St. Apt 2. Also, the “affidavit” of the officer from the Registry of Motor Vehicles states that one copy of the process was sent to Nguyen at his last address of record, “188 Lincoln St., Worcester.” This address is the address of plaintiffs counsel. Liberty attempted on one occasion to visit Nguyen at his home, unannounced, which was unsuccessful.
7. Following the entry of default judgment, Liberty received a report from an accident reconstruction specialist who offered the opinion that the accident was “staged.” This opinion was based upon a review of the accident reports prepared by the police officer and the insured, a visit to the scene, and an examination of the photographs of the vehicles. The specialist’s opinion is based upon the fact that the physical damage to the Van Le vehicle appeared to have consisted of two separate and distinct impacts. He did not see the actual vehicles, however, and could not state with reasonable certainty whether some of the damage pictured may have been “old damage” which could explain the apparent inconsistent impacts on the Van Le vehicle. To the extent that this testimony was offered to indicate a likelihood that the damage depicted in the photographs was inconsistent with the accounts given of the accident, thus implying a “staged” accident, I find that there was insufficient indicia of scientific reliability presented and it is therefore discredited.
8. On July 19, 1996, notwithstanding the pendency of the instant action, the imminence of trial and of the entry of a default judgment against its insured almost three years prior, Liberty settled with the other two bodily injury claimants, paying them a total of $26,000 (out of the $30,000 per accident limit for bodily injury coverage). This would leave only $4,000 of coverage available under the policy to the plaintiff herein.
RULINGS OF LAW
This case presents issues of the respective rights and duties of insurers and their policyholders with respect to the defense of claims, and, in particular, the right of an insurer to disclaim coverage for lack of cooperation of the insured, the duty of the insured to “cooperate,” the duty of the insurer to exercise due diligence in seeking this cooperation and the ramifications of a lack of cooperation, if shown. In addition, this case raises the issue as to what effect, if any, a default judgment against an insurer has on the defenses otherwise available to the insurer in an action to reach and apply policy proceeds and on the discretion available to an insurer to pay competing claims out of a policy with limited coverage.
A. Disclaimer of coverage
Both in a pre-trial motion for summary judgment and at trial, the plaintiff challenged the right of Liberty to disclaim coverage for lack of cooperation. This challenge is based on the fact that the policy in question had optional bodily injury coverage in the same amount as the minimum compulsory coverage, i.e., $15,000 per claimant and $30,000 per accident. Plaintiff interprets Hanover Ins. Co. v. Mota, 34 Mass.App.Ct. 928 (1993), aff'd, 416 Mass. 1011 (1994), to stand for the proposition that in circumstances where optional coverage limits are the same as the minimum compulsory limits, this optional coverage acts to expand the scope of compulsory coverage to include other persons who would otherwise be excluded because of their status in the automobile or locus of the accident. This becomes of material concern here since the plaintiff was a passenger in the insured vehicle and, if the insurer is allowed to disclaim coverage for lack of cooperation of its insured, this disclaimer is only effective as against optional coverage, such as guest coverage, but not compulsory coverage. Thus, if Liberty can disclaim coverage, plaintiff is without recourse unless she can come within compulsory coverage under the policy.
I read Hanover, supra, differently. In Hanover, the defendant claimed that she was entitled to receive the full amount of the $20,000 per accident limit of compulsory coverage on behalf of family members injured or killed in an automobile accident with the insured. The defendant also contended that passengers who were guest occupants in the vehicle driven by the insured were entitled to divide the $20,000 per accident limit of the optional coverage. The court in Hanover was singly concerned with the question of whether there were two separate coverages from which the claimants could obtain proceeds. By its reading of the policy to indicate that the optional coverage did not increase the limits of available coverage but rather expanded the scope of persons qualified to obtain coverage, the court had no intention of engrafting guest coverage into the compulsory coverage and thus protecting it from the insurer’s ability to disclaim it for lack of cooperation. The guest coverage continues to stand as optional coverage which is subject to the rights of the insurer to disclaim.
An insurer may disclaim optional coverage for the lack of cooperation of its insured. However, the insurer must use diligence and good faith in enlisting the cooperation of its insured. As it was stated in Imperiali v. Pica, 338 Mass. 494, 498-99 (1959) (citation omitted),
[T]he ‘problem of non-cooperation has a dual aspect: not only what the assured failed to do, but what the insurer on its part did to secure co-operation from an apathetic, inattentive, or vanished *253 policy holder, must be considered.’. . . [A]n insurer cannot be relieved of liability because of an alleged breach of a cooperation clause by the insured in a situation where it has not itself exercised diligence and good faith. Elementary principles of justice and fair dealing require such a rule. The obligations under a cooperation clause are reciprocal. The insured must cooperate; but the insurer is under a duty to exercise diligence and good faith in bringing that about.
In the case of Darcy v. Hartford Ins. Co., 407 Mass. 481 (1990), the court again discussed the cooperation clause within an insurance policy and, in addition to confirming the duty of the insurer to exercise diligence and good faith, stated that the insurer would have to show actual prejudice to the interests of the insurer before a denial of coverage would be permitted. The breach of the cooperation clause by an insured must be “substantial and material” before it allows an insurer to disclaim liability. Id. at 488.
[Cooperation clauses are designed primarily to protect the insurer’s interest in avoiding payment on claims which it cannot adequately defend. When that interest has not been jeopardized by the insured’s breach, in the sense that the insured’s infraction does not seriously impair the insurer’s investigation or defense of the action, there is no persuasive reason to permit the insurer to deny coverage under the policy.
Id. at 490.
In looking at the conduct of the parties, respectively, Liberty has not shown diligence and good faith in its efforts to obtain the cooperation of its insured. Prior to receiving notice of the default of the insured, Liberty had sent two letters to Nguyen, to which he did not respond, requesting that he contact them for the purpose of giving a recorded statement. Although receipts for these letters were signed, the letters were not accurately addressed. There may have been unsuccessful attempts to contact him by telephone. He had, by this point, responded to a request that he complete and sign an operator’s report. An adjuster had gone unannounced to speak with the insured at his last known address, but was likewise unsuccessful. Following their receipt of the notice of the default judgment entered in district court against its insured under G.L.c. 231, §58A, Liberty did nothing to vacate the default, enter an appearance or contact the insured, other than to send another letter in October, 1993, in which it notified its insured of its disclaimer of coverage, principally for his failure to notify Liberty of having received suit papers in the companion case involving the other two bodily injury claimants. I do not find that this constitutes diligence on the part of the insurer to obtain the cooperation of the insured.
Liberty’s decision to disclaim coverage and to refrain from appearing and defending their insured was apparently made on the basis of Nguyen’s failure to respond to two letters and to notify Liberty of the receipt of legal process. However, I am not satisfied that Nguyen ever actually received process. There is no evidence that service of process was made by any method other than by service on the Registrar of Motor Vehicles. The Registry officer’s affidavit indicates that a copy of the summons and complaint was sent to the insured at his address of record but the address listed was that of the plaintiffs attorney. Liberty had the opportunity to notify its insured of its intention to defend under a reservation of rights and enter an appearance to vacate the default challenging the sufficiency of service. See, Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 304 (1994). Further, Liberty could have made subsequent effort to contact the insured and obtain his cooperation, perhaps by means of an investigator or even a subpoena to a court hearing. Instead, upon notice of default judgment against its insured, Liberty chose to do nothing except to assume that two unanswered letters and a “possible" failure to notify them of the receipt of court papers justified disclaiming its insured and withholding defense. I do not find that this evidence amounts to a lack of cooperation. I therefore conclude that, on the record before me, Liberty’s disclaimer of coverage was improper.
Even if Liberty had acted diligently in seeking the cooperation of its insured and the conduct of the insured could be viewed as amounting to a lack of cooperation, Liberty would still be required to show that its interests were prejudiced thereby. G.L.c. 175, §112; Darcy v. Hartford Ins. Co., 407 Mass. 481 (1990). At the time that it was notified by the plaintiff of the default, Liberty had another month in which to seek its vacation prior to the entry of default judgment and another month prior to the assessment of damages. By that time it had obtained an accident report from its insured and the police officer responding to the accident as well as performed an investigation on which to base an offer of $6,800. Again, on the record before me, I am not satisfied that the insurer met its burden of showing that it was prejudiced in its ability to defend its interest at the point in time at which it made the decision to withhold defense and disclaim indemnity liability.
B. The Default Judgment
The consequences of the defendant having failed to show that it acted diligently in seeking the cooperation of its insured, therefore, is that it is bound by the judgment of the District Court at least as far as the liability for the accident is concerned and the amount of the judgment. G.L.c. 175, §113; Lodge v. Bern, 328 Mass. 42 (1951); Rogan v. Liberty Mutual Ins. Co., 305 Mass. 186 (1940). As the court stated in the Lodge decision, supra at 45 (citation omitted),
It is true that “Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defen[s]e or refuses *254 to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy.”
C. The Bill to Reach and Apply
Having arrived at the decision that Liberty is bound to the result of the District Court, we must examine the effect this outcome has, if any, on Liberty’s defenses to the instant action. Generally, in an action to reach and apply the proceeds of a liability insurance policy, the plaintiff has the burden of proving the insured’s compliance with policy terms and conditions. Peters v. Saulinier, 351 Mass. 609, 614 (1967). Moreover, in an action to reach and apply the non-compulsory coverage of a motor vehicle insurance policy, “any defense available to the insurer against the insured is also available against the plaintiff, for the plaintiff stands in the shoes of the insured.” Foshee v. Ins. Company of North America, 359 Mass. 471, 472 (1971) (citation omitted). Such defenses may include fraud and collusion. However, the conduct of the insurer may result in a waiver of these defenses or a plaintiff may satisfy her burden of proof that the insured complied with pertinent and material policy provisions. For the reasons stated above, I am satisfied that the plaintiff herein has met her burden of proof on these issues.
D. The Effect of a Prior Judgment on the Voluntary Settlement of Other Claims under Limited Coverage
Ordinarily, an insurer has discretion, in circumstance of limited insurance coverage, to pay only part of the claims presented, notwithstanding that such payment may result in an exhaustion of the funds available to otherwise pay the remaining claims and a preference of one claim over another. Bruyette v. Sandini, 291 Mass. 373 (1935). However, in Bruyette the court makes a distinction between claims which had not yet been reduced to a judgment and those which had been reduced. “The plaintiff [can] not establish any right to share in the assets of the insurance company until she ha[s] recovered the equivalent of a judgment against the defendant. Until such recovery, her claim against the insurance company [is] inchoate, or potential only.” Id. at 377 quoting Mathewson v. Colpitts, 284 Mass. 581, 585 (1933).
Here, the claim of the plaintiff had been reduced to a judgment. It was no longer merely a potential claim seeking to enforce the liability of the insured but rather a final judgment giving it a prioriiy over other “potential" claims. I find, under the circumstances of this case, that this judgment operates as a lien against the policy proceeds and that the insurer was not free to negotiate with other claimants the settlement of their bodily injury claims which arose from this same accident in excess of the amount remaining in the bodily injury coverage, i.e., $5,000, without the participation of the plaintiff. Subject to this “lien,” Liberty, acted at its own peril by resolving the other claims without the participation of this plaintiff. As a result, Liberty is liable to this plaintiff for the amount of the judgment, notwithstanding its voluntary dissipation of policy proceeds.
ORDER
For the foregoing reasons, I find in favor of the plaintiff. I therefore ORDER judgment to be entered in favor of the plaintiff in the amount of TWENTY-FIVE THOUSAND DOLLARS ($25,000), together with interest and costs of suit.