In re BOSTON REGIONAL MEDICAL CENTER, INC., Debtor.

Executive Risk Indemnity, Inc., Plaintiff,

v.

Boston Regional Medical Center, Inc., Defendant,

and

Jon Asgiersson et al., Nominal Defendants.

Bankruptcy No. 99–10860–CJK. Adversary No. 01–1376.

United States Bankruptcy Court, D. Massachusetts.

April 2, 2002.

88

Barbara O'Donnell, Esq., Boston, MA, Peter Lovato, III, Esq., Chicago, IL, for Executive Risk Indemnity, Inc.

Charles Bennett, Jr., Esq., for Boston Regional Medical Center, Inc.

Theodore Dinsmoor, Esq., Boston, MA, for Frances Crunk.

Michael Coppock, Esq., for Charles Ricks.

David Nickless, Esq., Nickless & Phillips, Fitchburg, MA, for five Nominal Defendants.

Paul Rezendes, Esq., Woburn, MA, for seven Nominal Defendants.

Howard Brown, Esq., for Laura Hogan.

Alan Hoffman, Esq., for Gordon Berg.

T. Philip Leader, Esq., Worcester, MA, for Ariel Schmidt.

Thomas Bean, Esq., for Atlantic Adventist Health Care.

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR INTERIM RELIEF AND ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CAROL J. KENNER, Bankruptcy Judge.

The Plaintiff, Executive Risk Indemnity, Inc. ("ERI"), issued a directors, officers and trustees liability insurance policy that provides two kinds of coverage relevant to this proceeding. First, it provides coverage to the officers, directors and trustees of Boston Regional Medical Center, Inc. ("the Debtor" or "BRMC") and of the Atlantic Adventist Healthcare Corporation ("AAHC") for their defense costs and liability; the parties call this "Side A" coverage. Second, it provides coverage to the Debtor itself for loss from certain claims for indemnification asserted by the insured officers, directors, and trustees against the

Debtor; this is the "Side B" or "indemnification" coverage. The policy provides coverage for all claims thereunder to a limit of $20 million.

On February 4, 1999, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code; in the case thereby commenced, the Debtor later proposed and this Court confirmed a Joint Liquidating Plan of Reorganization pursuant to which all property of the bankruptcy estate was revested in the debtor [1] and is to be liquidated for the benefit of creditors. As part of the liquidation, the Official Committee of Unsecured Creditors in the case brought suit against certain of the Debtor's officers, directors, and trustees for acts they committed in their official capacities ("the D & O action"). In that action and others, the officers, directors, and trustees have incurred defense costs that they contend are covered by the policy, and they have demanded payment of such costs from ERI. Many have also filed claims against the Debtor for indemnification with respect to the defense costs and liability they incur in those actions. The officers, directors, and trustees may yet be held liable in those actions for substantial damages. Aggregate claims by the officers, directors, and trustees for coverage of defense costs and liabilities may substantially exceed the policy's $20 million coverage limit. ERI is willing to pay the defense costs incurred to date,[2] but not without assurance from this Court that, in doing so, it would not be violating (a) a property interest of the Debtor in the proceeds and (b) injunctions (contained in the Plan and in the order confirming it), including the automatic stay as extended into the postconfirmation period by the Plan, that protect such property interests pending their liquidation.

Accordingly, ERI commenced the present adversary proceeding by filing a complaint against the Debtor. The complaint seeks the following relief:

1. a determination that the automatic stay does not enjoin ERI's payment of the defense costs;

2. in the alternative, if the automatic stay enjoins payment of the defense costs, relief from the stay to pay those costs;

3. a declaration that ERI may pay the defense costs despite any objection by the Debtor; and

---

1. Though the postconfirmation entity goes by the same name as the Debtor and exists within the same corporate shell, the postconfirmation entity differs materially from the Debtor. Reorganized BRMC is governed by a three-person board of trustees whose members are appointed by the Creditors Committee in this case. Joint Liquidating Plan of Reorganization, Article 5.3(a). This board in turn selects a "Liquidating Agent," who serves as president, treasurer, and clerk of Reorganized BRMC and is charged with conducting an orderly liquidation of the plan assets, distributing the proceeds to creditors in accordance with the plan, and otherwise implementing the terms of the plan. Id., Article 5.4. When the Liquidating Agent has completed the liquidation process and made the final distribution to creditors, Reorganized BRMC will be deemed dissolved. Confirmation Order, p.

13, ¶ 26. In short, Reorganized BRMC is nothing but a vehicle by which, under creditor control, the Debtor's assets are liquidated and distributed for the benefit of creditors. Any surplus remaining after payment in full of all allowed claims and administrative costs shall be transferred to the Southern New England Conference of Seventh Day Adventists, provided it is qualified as a charitable organization under the Internal Revenue Code and the Massachusetts General Laws. Joint Liquidating Plan of Reorganization, Article 5.8.

2. ERI contests coverage (that dispute is the subject of a separate adversary proceeding) but is willing to make payment under a reservation of rights with the various officers and directors.

4. a declaration that any such payment of defense costs are properly applied to the policy's limit of liability.

Because the adjudication of these requests would necessarily affect the rights of the officers, directors, and trustees as insureds under the policy, the Court directed ERI to join them in the proceeding, and, accordingly, ERI has joined them as nominal defendants. Though denominated "defendants," their interests are consonant with ERI's in this proceeding, and each supports the complaint. The Debtor opposes each of the four requests. Certain of the Nominal Defendants have filed counterclaims herein against ERI for coverage.[3]

The adversary proceeding is before the Court now on two motions: ERI's motion for summary judgment, and ERI's motion to authorize interim payment of expert costs. The Debtor opposes both.

### Subject–Matter Jurisdiction

■ Before addressing the motions, the Court must determine whether this proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b). 28 U.S.C. § 157(b)(3) (bankruptcy judge shall determine on her own motion whether a proceeding is a core proceeding). The parties maintain that, except with respect to certain counterclaims asserted by the nominal defendants, the adversary proceeding is a core proceeding. The Court agrees only as to ERI's demands with respect to the automatic stay. I construe these demand as seeking relief not only with respect to the automatic stay, but also with respect to the Plan injunctions that, upon Plan confirmation, supplemented the automatic stay and continued it in effect. These demands—for a determination that the stay and injunctions do not enjoin payment of defense costs, and, in the alternative, for

relief from the stay and injunctions to permit payment of such costs—clearly arise under the Bankruptcy Code, the confirmed plan, and the confirmation order, and are central to the bankruptcy process. They are core proceedings.

The complaint also seeks a declaration that defense costs that ERI pays to the officers, directors, and trustees, over BRMC's objection, would properly be applied to the policy's limit of liability. This count requires only an examination of the rights of BRMC under the policy. It does not arise under the Bankruptcy Code but under state contract and insurance law; it is not integral to the bankruptcy process or to the adjustment of the debtor-creditor relationship. It is not unique to bankruptcy and more commonly arises outside of bankruptcy. This same issue could have arisen between ERI and BRMC before bankruptcy. For these reasons, I conclude that, insofar as the adversary proceeding requires adjudication of this question (and others concerning rights under the policy itself), it is not a core proceeding. Therefore, this Court may adjudicate those issues only with the consent of the parties. ERI, BRMC, and all Nominal Defendants have consented to this Court's entry of appropriate orders and judgment with respect to any portion of the adversary proceeding that is determined not to be a core proceeding.

### Motion for Summary Judgment

■ ERI has moved for summary judgment on its complaint against BRMC, and the Nominal Defendants unanimously support the motion. BRMC opposes the motion. After a hearing on the motion, and for the reasons that follow, the Court will deny summary judgment.

---

**3.** The nominal defendants filed counterclaims here only to preserve their rights as to compulsory counterclaims. The same counterclaims are the subject of a separate adversary proceeding and will likely be adjudicated in that proceeding.

As the party asserting an interest in or rights to the proceeds and contending that plan injunctions enjoin actions that would impair or diminish such rights, BRMC has the burden of proving that it has an interest in the proceeds. ERI's argument for summary judgment is narrow, focusing on this one essential element of BRMC's case: whether BRMC has an interest in the proceeds. ERI's argument is a simple syllogism: BRMC can have an interest in the proceeds of the policy only if it has a claim *as an insured*, not merely as a plaintiff against a defendant who is an insured, to coverage under the policy; but BRMC has no claim as an insured; therefore, BRMC has no interest in the proceeds—from which it follows that disbursement of proceeds to the officers and directors can have no effect on any right of BRMC to the proceeds.

Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, the movant's initial burden is to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). ERI has carried this burden by pointing out, or contending, that there is no evidence that BRMC has a claim as an insured under the policy. The burden then shifts to the opposing party to adduce such evidence on this disputed element as at trial would be sufficient to withstand a motion for directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment will enter for the movant if the party bearing the burden of proof fails to establish the existence of an element

essential to its case. *Celotex Corp. v. Catrett,* 477 U.S. at 322–323, 106 S.Ct. 2548.

BRMC does not challenge the premise of ERI's argument: that, in order to establish an interest in the pool of proceeds, it must have a claim as an insured to coverage under the policy. Rather, BRMC contends that the minor of the syllogism is untrue, because—as no party disputes—various officers, directors, and trustees have asserted claims against BRMC for indemnification as to their defense costs and potential liability, and BRMC, as an insured with Side B coverage, is entitled to coverage of such claims. Therefore, BRMC contends, ERI's motion for summary judgment must fail.

ERI and the nominal defendants disagree, arguing that BRMC's claims for indemnification coverage are but a red herring. They do not dispute that BRMC's claims for indemnification coverage are real and valid claims to coverage. Rather, they argue that, because the defense costs that ERI now seeks to pay are among the claims for which BRMC is seeking indemnification coverage, payment of those costs directly to the officers and directors will, on a dollar for dollar basis, reduce BRMC's indemnification obligations and cannot possibly increase the indemnification obligations that will remain to be paid after policy proceeds have been exhausted.

The Court deems this argument unavailing because it is predicated on a factual allegation—that the defense costs that ERI now seeks to pay are among the claims for which BRMC will need indemnification coverage—that is neither uncontroverted nor, as ERI and the nominal defendants seem to contend, obviously and necessarily true.[4] BRMC disputes liability

---

4. The burden of proving that the proposed payments of defense costs would, dollar for dollar, reduce BRMC's indemnification obli-

gations falls on ERI, and ERI has not submitted such evidence on this issue as would be sufficient to withstand a motion for directed

for many if not all of the indemnification claims that have been asserted against it. At the end of the day, BRMC may succeed in defeating some of those claims. If the defense costs that ERI proposes to pay are not among those for which BRMC is ultimately deemed liable, then payment of those costs would not inure to BRMC's benefit. Rather, such payments would result in payment of some insured claims (the paid defense costs) in full and reduction of the pool of proceeds available to pay the remaining claims. If the remaining pool were, in the end, insufficient to pay all qualified claims of insureds to coverage—a result that is entirely possible here—then the initial payments would impair the rights of the remaining insured claims to coverage; the latter, as a group, would necessarily receive less than their pro rata share of the pool of proceeds. I conclude that BRMC's undisputed right to indemnification coverage, no red herring, defeats ERI's argument for summary judgment and requires that the motion be denied.[5]

Before leaving the subject of summary judgment, the Court must address another argument for summary judgment that was made not by the movant but by seven Nominal Defendants (acting jointly) in a brief they submitted in support of ERI's motion; they filed no separate motion for summary judgment. They argue that, even if BRMC is an insured with a right to coverage of existing claims for indemnification, ERI is entitled to summary judgment because, under settled Massachusetts law, defense costs enjoy priority over other claims for coverage under an officers and directors liability policy. They contend that the matter was settled in the case of *Regan v. Vinick & Young (In re Rare Coin Galleries of America, Inc.)*, 862 F.2d 896 (1st Cir.1988).[6] The Court disagrees.

*Rare Coin* involved an attempt by a plaintiff, suing an insured, to obtain a preliminary injunction to (1) reach and apply the insured's right to insurance coverage (of the plaintiff's claims for damages) and (2) enjoin the insurer from disbursing insurance proceeds except in satisfaction of the plaintiff's claim for damages. The policy in question had a limit of liability under which damage claims plus "claims expenses" could not exceed $250,000. The

verdict (which is its obligation on a motion for summary judgment with respect to issues on which it would bear the burden of proof at trial). Moreover, this argument was made by ERI for the first time in a reply brief, not in the motion itself, so BRMC has not been afforded fair opportunity to adduce evidence in response.

ERI has not indicated whose defense costs *it seeks to pay, the amount claimed by each* insured, and the amount it proposes to pay on reach claim. Nor has it shown which of the insureds have asserted claims against BRMC for indemnification.

5. In reaching this conclusion, I reject the *suggestion by the nominal defendants that* BRMC's indemnity coverage is ultimately a protection for the officers, directors, and trustees, not a corporate protection, and therefore cannot be interposed to defeat the

right of the officers, directors, and trustees to payment. The insureds with respect to indemnity coverage are the entities who are obligated to pay claims for indemnification. The coverage enables them to pay the claims for indemnity *without depleting their own resources in doing so.* This coverage inures in part to the benefit of the entity's officers, directors, and trustees, but the coverage is the entity's, and it inures in no small part to the entity itself by protecting the assets of the entity.

6. ERI relied on this case, too, in its memorandum in support of its motion for summary judgment, but only for the proposition that "under Massachusetts law a liability contract is purely bilateral, with the insurer's duties running only to the insured, and not to nonparties, such as an excess insurer or injured plaintiff," which proposition BRMC does not here take issue with.

policy defined "claims expenses" as "any and all costs, charges, fees, and/or expenses incurred by [ISLIC, the insurer] in investigating, defending, negotiating and/or otherwise attending to a claim, or any litigation arising therefrom." In other words, the policy itself permitted the insurer to reimburse itself for the costs it incurred in litigating and defending the insured on the covered claim; and the maximum that the insurer was obligated to pay the insured for liability was the policy limit *less claims expenses*. The proposed injunction would have prohibited payment of claims expenses, including the insured's defense costs. The district judge allowed the preliminary injunction as requested, and both the insured and the insurer appealed.

On appeal, the First Circuit vacated the injunction against disbursement of proceeds. The Court held that, under the policy itself, the insured could recover, for damages, only as much of the policy limit as remained after the insurer reimbursed itself for claims expenses. And, it further held that, under Massachusetts law, an insurer's duties run only to the insured, not to non-parties, so the non-party plaintiff can have no greater rights than the insured itself.[7] Because the insured had no right under the policy to bar disbursement of proceeds in satisfaction of claims expenses, neither could the plaintiff have any such right. The Court concluded that, because the plaintiff, standing in the shoes of the insured, could never obtain a right to the portion of the policy proceeds reserved for claims expenses, there was no harm to the plaintiff in the insurer's disbursement of policy proceeds for that purpose. Absent this harm, which was the only harm that the Plaintiff had offered in support of the preliminary injunction, the balance of harms now tipped toward the insured, who, among other things, was being deprived by the injunction of the funds needed to fund its defense, and therefore the First Circuit vacated the preliminary injunction.

*Rare Coin* does not hold that, under Massachusetts law, defense costs enjoy priority over liability or indemnity coverage. Claims expenses were deemed to hold priority in that case only because *the policy* so provided, and the First Circuit construed the policy in this way in large part because the claims expenses were payable to the insurer itself and constituted a setoff against the liability limit.[8] In this case, the seven Nominal Defendants argue that Massachusetts law itself—in the form of an alleged common law rule governing priority among insureds—gives priority to defense costs, but for this they have offered no support other than *Rare Coin.* Moreover, *Rare Coin* did not involve a contest between two insureds, only between (on the one hand) an insured and the insurer and (on the other) a plaintiff seeking damages against the insured (and seeking to reach and apply the insured's right to coverage). Therefore, *Rare Coin*

---

7. The plaintiff had obtained an order permitting it to reach and apply the insured's right to the proceeds; I surmise that, though the First Circuit, later in the opinion, vacated the reach and apply part of the preliminary injunction, the Court was still, at this point in its opinion, treating the plaintiff as holding the insured's rights under the policy.

8. Neither ERI nor the nominal defendants have argued or offered evidence that the poli-

cy at issue should be so construed. In fact, the policies are materially different. Unlike the policy in the *Rare Coin* case, the policy at issue does *not* obligate ERI to provide the defense itself, only to reimburse the officers, directors, and trustees for the defense costs *they* incur. Given this structure, there is not need for a hold-back for defense costs incurred by the insurer.

does not establish that, under Massachusetts law, defense costs enjoy priority over other claims for coverage under an officers and directors liability policy; the argument based on *Rare Coin* fails.

### Motion to Authorize Interim Payment of Expert Costs

■ ERI has also moved for an order authorizing it to pay the Nominal Defendants' reasonable expert costs in Adversary Proceeding No. 00–1550, the D & O action, during the interim period pending the Court's determination on the motion for summary judgment. ERI and the Nominal Defendants state that the latter have immediate need of this advance, which they estimate will total between $500,000 and $600,000, in order to secure the services of experts in time to meet discovery deadlines in the D & O action; pursuant to a stipulation among the parties to that action, the nominal defendants must produce and disclose the written reports of their experts by April 30, 2002. The various Nominal Defendants contend they are financially unable to commit to pay their experts and are dependent on an advance of insurance proceeds to secure the experts' services. BRMC opposes the motion, primarily on the basis that the disbursement of proceeds would diminish the amount of proceeds available to satisfy the claims for coverage of BRMC.

The Court has now resolved the motion for summary judgment, and the motion for interim relief asks only for authorization *pending resolution of the motion for summary judgment,* but the motion for interim authorization is not therefore moot. The nominal defendants still have need of the funds, and it was plain to the Court, and I believe to BRMC, that ERI was seeking relief *pending final adjudication of its complaint,* which it hoped would occur upon determination of the motion for summary judgment. Accordingly, the motion is *not* moot and will be treated as one for relief pending final adjudication of the complaint.

What precisely is the interim relief that ERI seeks? ERI asks for "authorization" to make payments. By this, I understand ERI to be requesting relief from any stay or injunction, deriving from the Plan, the Confirmation Order, or the Bankruptcy Code, that may now be prohibiting ERI from paying the defense costs at issue; or, in the alternative, ERI seeks a declaration that no stay or injunction now enjoins ERI from making the contemplated payment. It is unclear whether ERI is also seeking assurance that any such payment of defense costs can be applied to the policy's limit of liability. This is not a motion for preliminary injunction; ERI does not ask that the Court enjoin BRMC in any way.

Nonetheless, the motion is like one for preliminary injunction in that it seeks to preserve rights under the policy—the rights of the officers and directors to receive proceeds for payment of defense costs when they need those payments—pending final adjudication of the merits. The Court will analyze the motion like one for preliminary injunction. Accordingly, the Court must consider (1) the likelihood of ERI's succeeding on the merits, (2) whether the Nominal Defendants, to whom ERI seeks to disburse proceeds, will be irreparably harmed if the payments are not made now; and (3) whether such harm would outweigh any harm that might be suffered by BRMC if the payments are made. The public interest, which is normally a consideration on motions for preliminary injunction, does not appear to be implicated by this motion. Neither of the parties has expressly addressed these criteria. ERI bears the burden of proof on its motion for interim relief.

### 1. *Likelihood of Success on the Merits*

As the party asserting that it has an interest in the policy proceeds, and that such interest is protected by injunctions in the confirmed Plan and in the Confirmation Order, the Debtor bears the burden of proof on the merits. What interest, if any, does BRMC have in the policy proceeds? The property interest at issue in this proceeding is a contract right, BRMC's right under the policy to coverage for its indemnification obligations. No one denies that BRMC has a right to such coverage. The problem is that other insureds also have rights to coverage, and that total claims for coverage may exceed the policy limit of $20 million, such that not all claims can be paid in full. When claims for coverage exceed the policy limit, payment of any one's claim in full necessarily reduces the value of the claims of the others (at least as a group): they, as a group, will be paid a lesser percentage of their claims than if the payment had not been made and all claims had shared equally in the whole pool of proceeds.

Absent contrary provisions in the policy, or in state law, or in a separate agreement among the insureds, none of which have been cited here, the rights of coverage of the various insureds must be assumed to be equal. Under this (admittedly preliminary) reading of the law and of the likelihood of success, BRMC is likely to establish (1) that it is entitled to share in the total proceeds on an equal—*i.e.*, pro rata—basis and (2) that, when any claim for coverage is paid more than its pro rata share, the rights of all others to coverage are impaired and, to the extent impaired, appropriated.

What is less clear is how that right can be protected or enforced. BRMC has offered no support in Massachusetts law, or in the policy at issue, for the proposition that the right of any insured to a pro rata share of the proceeds can be enforced by an action for damages against the insurer; nor has BRMC shown that the policy obligates the insurer to ensure equality of distribution among insureds. ERI is likely to prevail on this issue: that is, the Court is likely to hold that, upon distribution of proceeds up to the policy limit, ERI would have no further obligation to any insured, regardless of whether the proceeds have been equitably distributed among the various insureds.

Therefore, the most obvious mechanism for enforcement is by preliminary injunction (in an action against all covered insureds for equitable distribution), where the injunction would enjoin disbursement of the proceeds, or some portion thereof, until the share of each insured could be finally determined. Here, BRMC assumes that the Plan and Confirmation Order have put in place the necessary injunction; BRMC has not separately moved for a preliminary injunction.

Do the Plan and Confirmation Order enjoin the distribution of proceeds?[9] The

---

9. The plan and confirmation order expressly extend the automatic stay into the postconfirmation period, and the automatic stay (11 U.S.C. § 362(a)) enjoins acts against "property of the estate," but here the property at issue—BRMC's right as an insured to a pro rata share of the policy proceeds—has been revested by the plan in BRMC and no longer belongs to the bankruptcy estate; therefore, the automatic stay would appear *not* to apply.

The plan and confirmation order contain supplementary injunctions, and these enjoin any act against property of Reorganized BRMC, but only where the act against the asset "has the effect of asserting, liquidating or enforcing any Claim," meaning a claim against the Debtor. Confirmation Order, ¶ 22; see also Joint Liquidating Plan of Reorganization, Article 8.1. Here, the claims that the Nominal Defendants seek to collect are claims against

parties have not briefed or argued this issue, and BRMC has not cited the specific injunctive provisions that it contends are operative here. The Court's review of the various injunctive provisions leads to the conclusion that none enjoins the distribution of proceeds. The plan and confirmation order expressly extend the automatic stay into the postconfirmation period, and the automatic stay (11 U.S.C. § 362(a)) enjoins acts against "property of the estate," but here the property at issue—BRMC's right as an insured to a pro rata share of the policy proceeds—has been revested by the plan in BRMC and no longer belongs to the bankruptcy estate; therefore, the automatic stay would appear *not* to apply. The Plan and Confirmation Order contain supplementary injunctions, and these enjoin any act against property of Reorganized BRMC, but only where the act against the asset "has the effect of asserting, liquidating or enforcing any Claim," meaning a claim against the Debtor. Confirmation Order, ¶ 22; see also Joint Liquidating Plan of Reorganization, Article 8.1. Here, the claims that the Nominal Defendants seek to collect are claims against the insurer, ERI, for coverage under the policy, not claims against BRMC [10]; therefore, the acts at issue appear not to be covered by the plan injunctions. I conclude that ERI is likely to prevail on its count for a declaration that no injunction presently enjoins payment of the proceeds now at issue.

In short, BRMC has a right, vis-a-vis the other insureds, to a pro rata share of the policy proceeds, and, if ERI were to distribute proceeds to other insureds, BRMC's interest in the proceeds would likely be impaired, but BRMC will probably have no recourse against ERI at law, and it appears that no injunction now prevents ERI from making the distribution.

### 2. *Irreparable Harm To the Nominal Defendants?*

The motion for interim relief is based on a need to avoid irreparable harm to the Nominal Defendants, not to ERI itself. The Nominal Defendants need for the proceeds to be distributed to them *now*, so that they can procure the services of experts in time to effectively defend themselves in the D & O action. If the costs of defense are not disbursed in time to provide the defense, a significant part of their value and of their function will have been lost. Time is of the essence. ERI is willing to honor the Nominal Defendants' demand for immediate payment as to the expert costs, and, in making the present motion, they are essentially advancing the interests of the nominal defendants by honoring policy obligations to them.

BRMC disputes the Nominal Defendants' contention that they are not financially able to retain their experts without benefit of insurance proceeds, pointing out that the Nominal Defendants have already designated their experts and provided disclosure about the experts areas of testimony. The Court finds that Nominal Defendants do need the insurance proceeds to retain the experts. Initial disclosure costs nothing, but if payment is not soon forthcoming, follow-through by the experts will be harder to procure.

the insurer, ERI, for coverage under the policy, not claims against BRMC; therefore, the acts at issue appear not to be covered by the plan injunctions. I conclude that ERI is likely to prevail on its claim that no injunction presently enjoins payment of the proceeds now at issue.

**10.** The Nominal Defendants may be able to recoup the same defense costs from BRMC, but the claim against BRMC is a separate claim from the one being asserted against the insured.

The Court agrees that the Nominal Defendants' need for disbursement of expert costs is pressing and that the Nominal Defendants will be irreparably harmed if proceeds are not distributed to them soon, in time to conduct their defense. Whether or not the deadline for submitting experts' reports can be modified, clearly that deadline and the underlying D & O litigation cannot be delayed for as long as it takes the parties to resolve the present adversary proceeding and others affecting the rights of the various insureds to the policy proceeds. If disbursement of defense costs were to await full resolution of all rights of the parties to the insurance proceeds, then the policy proceeds would provide financial remuneration but fail in their purpose of providing a legal defense.

### 3. Harm To BRMC From Payment of Expert Expenses

BRMC argues that it will be irreparably harmed by the proposed disbursement because the payment of defense costs would substantially diminish the available policy proceeds from which its claims for indemnification coverage could be satisfied. In other words, when claims for coverage are likely to exceed the policy limit, the payment of any claim in full effects a preference in favor of that claim and necessarily relegates the other claims to a smaller share than they would have received had all claims been paid on a pro rata basis. The Court agrees that ERI's payment of the expert costs would have this effect. But, for the following reasons, the Court concludes that harm to BRMC is uncertain, less severe than the opposing harm to the Nominal Defendants, and probably not irreparable.

First and foremost, the proposed payment is relatively small in proportion to the policy limit—approximately one-fortieth of total proceeds—and surely will not be the last coverage demanded by the insureds for whose benefits the proposed payments are to be made. If total claims against the policy ultimately exceed the policy limit, the share paid to the various insureds can be equalized by withholding payment (or some fraction thereof) on later claims from those who have already received coverage in order to fund the pro rata share of those who have not already received coverage. In other words, the payment of later claims can be manipulated to assure a pro rata distribution of the total proceeds among the various insureds.[11]

Second, there will be no harm at all if claims against the policy do not exceed the limit. Nor will there be harm to the extent that the claims now being paid are among the claims for which BRMC is ultimately obligated to indemnify the Nominal Defendants; in that case, ERI's payment of the expert expenses would also, on a dollar-for-dollar basis, constitute a payment of the indemnity obligations. Although I cannot attach probabilities to these possibilities, they materially diminish the likelihood of harm to BRMC.

Third, if BRMC were harmed by the payments, the harm would not be in the full amount of the payments, because each insured is, after all, entitled to its own pro rata share of the proceeds. Rather, the extent of BRMC's harm would be only in the amount of (1) BRMC's share of (2) the amount by which the payments caused the Nominal Defendants to receive more than

---

11. This ability to equalize distribution is critical to the Court's conclusion that relief from any applicable injunction is warranted here. And the ability to equalize distribution is itself contingent on the fact that the proposed distribution represents so small a percentage of the proceeds.

they would have under a pro rata distribution of the whole.

Fourth, although it is doubtful that BRMC could seek compensation for this harm directly from ERI, BRMC may be able to seek such compensation—in essence, an equitable redistribution of policy proceeds—by direct action against the Nominal Defendants themselves, perhaps in the D & O action itself.

For these reasons, the Court concludes that the proposed distribution could harm BRMC, but that harm is not certain, is probably not irreparable, and, in any case, is not as severe as the harm that would befall the Nominal Defendants if the proposed payments were not made.

### 4. *Conclusion as to Interim Relief*

For the reasons set forth above, I conclude that the proposed payments for expert costs may be made without (apparently) violating the automatic stay or any injunction set forth in the Bankruptcy Code, the Joint Liquidating Plan of Reorganization, or the Confirmation Order. The Court can make no *final* determination at this time about whether any applicable injunction is now in place, but, in view of the Court's findings on the balance of harms, the Court will grant relief from any applicable injunction for purposes of making payments of expert costs not to exceed $600,000.

ERI's motion does not call for an injunction, so none is needed here. It is not clear whether the motion, in seeking "authorization" for the payment, seeks assurance that the payment (1) may be applied in full to the policy limit and (2) will not give rise to a claim in favor of BRMC for breach of obligations under the policy. Although the Court has determined that ERI is likely to prevail on those issues, the Court cannot provide final assurance on an interim motion, before full consideration of the evidence and the law. To this extent, ERI must make the proposed payments at its own risk. Accordingly, the Court will not "authorize" the payment in this sense but will grant leave to make the payment, insofar as leave is necessary at all. A separate order will enter accordingly.